### HEIRS OF B. I. BURTON v. SIDNEY CARROLL ET AL.

No. 1190.  Decided March 5, 1903.

**1.—Possession by Tenant.**

Finding that one holding possession of land for ten years did so as tenant for another, held not without evidence to support it. (Pp. 323-325.)

**2.—Title by Limitation.**

Possession of land for ten years extinguishes the title of the legal owner and vests it in the one so holding possession. (P. 325.)

**3.—*Limitation—Three Years—Color of Title.***

Possession for three years under one whose legal title by patent from the State had been extinguished by ten years previous possession by an adverse claimant, will not support limitation. (Pp. 325-326.)

Error to the Court of Civil Appeals for the Second District, in an appeal from Denton County.

Carroll and others sued Scripture and others for the recovery of land, and the heirs of Burton made themselves also defendants as lessors of Scripture et al. Plaintiffs had judgment. Defendants appealed, and on affirmance obtained writ of error.

*Nunn & Nunn,* for plaintiffs in error. [*E. C. Smith* and *Bates & Roark* were also on brief in appellate court.]—Your petitioners would respectfully represent that the findings of the trial court as above stated unequivocally show that the said heirs of B. I. Burton, deceased, took possession of the land in controversy on the 30th day of January, 1894, by virtue of the tenancy of C. P. Scripture, who, under a written contract of tenancy, had remained in possession of the said land as petitioner's tenants from that date until the institution of this suit, on the ——— day of ———, 1900, and that J. W. Jagoe, who was the agent of the plaintiffs and their vendor, in reference to this land, had knowledge of such tenancy since the 30th day of January, 1894, when C. P. Scripture did enter into the lease contract above mentioned, and the evidence shows that J. W. Jagoe was the agent and only person through whom appellants claimed any contract for them with C. P. Scripture as tenant, thereby showing if any tenancy had ever existed in favor of the appellees by virtue of the Scripture possession it was fully repudiated on the 30th day of January, 1894, and that the trial court found

contrary to law in the conclusions as stated by the court as follows: "I further find that the occupancy of said land by the Scriptures was sufficient to vest title thereto in the plaintiffs by limitation, and that by reason thereof the defendant did not acquire title thereto by limitation by reason of the occupancy and tenancy of C. P. Scripture." Thereby holding in effect that the title acquired by limitation in favor of the appellees, as found by the court, precludes the appellants from reacquiring the land by subsequent limitation, notwithstanding the evidence showed and the court found a possession in favor of the Burton heirs under the legal title for a period of more than six years, and notice given of such holding; having the effect to repudiate any tenancy in favor of appellees, if any such could be claimed ever to have existed prior thereto.

Your petitioners would further show that the patent to said land was issued to and in the name of the heirs of B. I. Burton, deceased, thereby showing that they held and possessed the legal title to said land, and that their possession thereunder for a period of three years was sufficient to vest in them full and complete title, irrespective of any claim of appellees; and it is further shown that these petitioners, the heirs of B. I. Burton, deceased, have never parted with their title to said land, or in any manner has same been divested out of them by any act of theirs, or by any proceedings of the court, or otherwise, whereby they will be estopped from claiming to be the legal owners of said title to said land. That the appellees' title, as claimed in this suit, and as sustained by the trial court, and the Court of Civil Appeals, is by virtue of the claim of limitation in favor of the appellees, prior to January 30, 1894, at which time your petitioners took adverse and peaceable possession of the said land, and thereby held same more than three years, all of which is shown by the findings of the trial court and by the evidence in the case.

We respectfully submit that there is no evidence in the case that the appellees ever held possession of this land at any time or in any manner, except on the disputed point of R. C. Scripture's possession, taken on February or March, 1883, and abandoned in 1885; and that there is no evidence that Chas. P. Scripture, who took possession in 1885, after R. C. Scripture abandoned the same, did in any manner do so as the tenant of the appellees or their vendor; and further it clearly appears by the findings of the court, and by the uncontradicted evidence, that the said Chas. P. Scripture acknowledged the tenancy to your petitioners on January 30, 1894, giving notice thereof to J. W. Jagoe, who claimed to be the agent of the appellees and their vendor, and through whom alone a claim of possession was made by virtue of his alleged contract with R. C. Scripture; and your petitioners claim that the possession begun on January 30, 1894, with Chas. P. Scripture as tenant, and notice thereof given to the said Jagoe, as admitted, had the effect of putting the statutes of limitation in motion in favor of your petition-

ers, and the said possession continuing for a period of three years there-
after, without interruption, had the effect of vesting in your petitioners
the title to the land.

We cite in support of this position the following authorities: Flan-
nagan v. Pearson, 61 Texas, 304; Willison v. Watkins, 3 Peters, 43;
Merryman v. Bourne, 9 Wall., 601.

*Davis & Garnett,* for defendants in error.—Article 3347 says: "When-
ever in any case the action of a person for the recovery of real estate
is barred by any of the provisions of this chapter, the person having
such peaceable and adverse possession shall be held to have full title
precluding all claims."

Full title is a very comprehensive term. If one person has full, com-
plete, or all the title to a tract of land, there is no room for any kind
of ownership in another.

In order not to be misunderstood, the Legislature went further and
says that this full title precludes or shuts out all claims. There is no
title left in the original owner upon which he can maintain a suit, even
against a trespasser. Spofford v. Bennett, 55 Texas, 293; Branch v.
Baker, 70 Texas, 190; Smith v. Uzzell, 61 Texas, 220; Mims v. Rafel,
73 Texas, 300.

When title by limitation has been established, the former owner has
no title at all. A purchaser from him without notice that limitation
has divested the title takes nothing. East Texas L. & I. Co. v. Shelby,
17 Texas Civ. App., 685; McGregor v. Thompson, 7 Texas Civ.
App., 32.

The case of Grayson v. Peyton, 67 S. W. Rep., 1074, is precisely in
point. There the heirs of the patentee sought to defend under plea
of three years limitation as against a person who had acquired title by
ten years limitation. It was held that the ten years possession had
extinguished the title conferred by the patent, and that the heirs of
the patentee no longer had title, or color of title, within the meaning
of the statute. This is in harmony with all the other decisions upon
the subject. If the patentee has parted with his title by voluntary or
involuntary sale, he no longer has such title as will support the three
years statute of limitation. Harris v. Hardeman, 27 Texas, 249; Blum
v. Rogers, 71 Texas, 677; Paxton v. Meyer, 67 Texas, 96; Wright v.
Daily, 26 Texas, 731.

There is abundant evidence justifying the conclusion of the court
that Mrs. Rhoda Crane and her vendees had ten years continuous ad-
verse possession of the land. In 1882, R. C. Scripture and one Ull-
man owned the Sanchez and McGill surveys aggregating about 500
acres, and which adjoined the survey in controversy. Scripture fenced
this land in 1882, and it has been fenced ever since. J. W. Jagoe
testified that the fence was so run as to include the Burton survey, un-
der an agreement between him and R. C. Scripture that Scripture

should have the use of the land for five years for fencing the same, and that Mrs. Crane should pay the taxes. Strongly corroborative of this is the evidence of both Jagoe and Scripture, that during this lease Scripture went to San Antonio and procured the title papers from Sargent's widow, and delivered them to Jagoe. Scripture also made several efforts to buy the land from Mrs. Crane. In July, 1885, R. C. Scripture failed in business and surrendered his effects to his brother C. P. Scripture, who had been previously clerking for him, but made no assignment of the lease from Mrs. Crane. C. P. Scripture evidently knew all about the transaction with Mrs. Crane. He set up no claim to the land and acquired possession through and under R. C. Scripture, and his possession of Mrs. Crane was that of R. C. Scripture. The evidence tends strongly to show that the conveyance from R. C. to C. P. Scripture was a sham. Even since C. P. Scripture's pretended lease from the heirs of B. I. Burton, R. C., instead of C. P., has been using and pasturing the land. The Scriptures, J. W. Jagoe and Judge Carroll resided in the same town. Mrs. Crane and Judge Carroll rendered and paid taxes on the land from year to year, and no one ever heard of the Scriptures setting up any claim to it.

This brings us to another question in the case. R. C. Scripture acquired possession as Mrs. Crane's tenant. C. P. Scripture acquired possession through and under R. C. Scripture, and he was in like manner Mrs. Crane's tenant. His possession was in no sense adverse. Now could C. P. Scripture, who was in possession in subordination to Mrs. Crane and the Carroll heirs, attorn to a stranger and thus make his possession, begun in privity with the Carroll heirs, adverse to them? It would seem not under the authority of Fowler v. Simpson, 79 Texas, 611.

BROWN, ASSOCIATE JUSTICE.—The Court of Civil Appeals adopted the conclusions of fact filed by the trial court, which are as follows:

"1. That B. I. Burton, to whose heirs the land in controversy was patented by patent dated December 13, 1859, died about the year 18—, leaving a will which was duly probated in the County Court of Houston County, Texas, in the year 1844, by which he gave all his estate to two of his nephews, each of whom was named B. B. Lacy, in equal portions. That one of the said B. B. Lacys, by deed dated November 17, 1851, conveyed one-half of the certificate by virtue of which said land was located and patented to Thomas George, and the other of said B. B. Lacys, by his deed dated September 10, 1856, conveyed the other half of said certificate to W. H. Cundiff.

"2. That said Thomas George by deed dated May 22, 1856, conveyed to said W. H. Cundiff his half of said certificate, and that said Cundiff by deed dated August 25, 1863, conveyed the land in controversy to Jas. P. Sargeant, and that the plaintiffs have a regular chain of transfer of the land from Sargeant down to themselves.

"3. In the year 1883 the defendant R. C. Scripture owned two tracts of land adjoining the land.in controversy which he inclosed with a fence. At the same time he fenced the land in controversy, extending the fence around his own land so as to take in this. He fenced this land at the request of J. W. Jagoe, who was the agent of Mrs. Crane, one of plaintiff's grantors, and who was then the owner of the land, and occupied and used the same by keeping stock upon it, as the tenant of Mrs. Crane, in connection with his own land which was inclosed with it. He continued such use until July 6, 1885, when he sold his land in said inclosure to defendant C. P. Scripture, who, upon his purchase of R. C. Scripture's land, took possession of the land in controversy at the same time he did that which he had bought, and used it in connection with his own until the 30th day of January, 1894. That prior to the 30th day of January, 1894, neither R. C. nor C. P. Scripture informed Mrs. Crane, her agent, or plaintiffs, that R. C. Scripture's holding of said land as tenant of Mrs. Crane was repudiated, and they had no knowledge that the holding of the Scriptures was in hostility to them.

"4. From the time R. C. Scripture took possession of said land as tenant of Mrs. Crane to the present time, all taxes upon said land have been paid by the plaintiffs and their vendors, and the deed from W. H. Cundiff to Jas. P. Sargeant, one of the transfers in plaintiff's chain of title, was duly registered in the deed records of Denton County on the 5th day of July, 1878, and the deed from Jas. P. Sargeant to Mrs. Crane, another of said transfers, was duly registered on the 6th day of July, 1878.

"5. On the 30th day of January, 1894, the defendants, heirs of said B. I. Burton, including the heirs of the two B. B. Lacys, both of whom were then dead, through their attorney, leased said land to the said C. P. Scripture, who entered into a lease contract in writing, whereby he acknowledged himself to be the tenant of the heirs of said B. I. Burton, and he remained in possession of said land as such tenant from the 30th day of January, 1894, to the institution of this suit, on the —— day of ——, 1900. That J. W. Jagoe, who was the agent of plaintiffs in reference to this land, learned soon after the 30th day of January, 1894, that C. P. Scripture had entered into the lease contract above mentioned."

The application for writ of error presents the two following propositions: First. There is no evidence to show that the Scriptures held the land as tenants of defendants in error. Second. The possession by the plaintiffs in error for three years operated to bar the title of the defendants in error and constituted a good defense to this action.

. We are of opinion that there is sufficient evidence in the record to sustain the court's conclusions of fact that R. C. Scripture occupied the land as tenant of Mrs. Crane, and that C. P. Scripture received

·the possession of the land from R. C. Scripture and continued to occupy the same for the full period of ten years.

The solution of the second proposition depends upon the effect the ten years adverse possession of defendants in error had on the legal title of the heirs of B. I. Burton.

Art. 3347, Rev. Stats., reads as follows: "Whenever in any case the action of a person for the recovery of real estate is barred by any of the provisions of this chapter, the person having such peaceable and adverse possession shall be held to have full title, precluding all claims."

By the plain terms of this statute the continuous, peaceable, adverse possession of the land for ten years claiming title thereto conferred upon the defendants in error "full title;" that is, all of the title which had emanated from the State vested in defendants in error as against the claim of any and all persons. East Texas L. and I. Co. v. Shelby, 41 S. W. Rep., 542, 17 Texas Civ. App., 685; Grayson v. Peyton, 67 S. W. Rep., 1074; Branch v. Baker, 70 Texas, 190. The decisions of our court here cited, as well as others, uniformly hold that the effect of the above quoted statute is to vest in the possessor, who has complied with the statute of limitation, a full and complete title to the land.

In East Texas Lumber and Improvement Co. v. Shelby, above cited, Shelby and others occupied the land in controversy for the full period of ten years under the circumstances prescribed by the statute as necessary to confer title, and after the expiration of the ten years, they abandoned the possession of the land. They had no paper title under which they claimed and therefore had no record of their title. East Texas Lumber and Improvement Co. purchased the land from the person who held the paper title without notice of the claim of Shelby and others under their ten years possession. The Court of Civil Appeals held that the title by limitation had become perfected at the end of the ten years possession and was not affected by the abandonment, and affirmed a judgment in favor of Shelby and others for the land. A writ of error was applied for and was refused by this court. That judgment could not have been sustained under any theory other than that the title by limitation was superior to the chain of title and that the superior title to the land was vested by limitation in Shelby and others.

In Branch v. Baker, before cited, an outstanding title by limitation in a third person was pleaded by Baker to defeat the claim of the plaintiff in that case. It was claimed that Baker could not use a title by limitation in a third person as a shield to protect his naked possession. The Supreme Court, speaking by Judge Stayton, says: "If Baker had never had any claim under the patent issued to himself to the land so long occupied by Coward, but without color of right asserted a claim or held possession as a naked trespasser, in an action brought against him by Branch it would be a competent defense to

him to show a superior outstanding title in a third person. Whether the title of such third person was acquired by a regular chain of transfer to himself from the sovereignty of the soil, or through an adverse possession for the period and under such circumstances as deprived a former owner of title and cast it upon the adverse possessor, it would seem would be a matter unimportant." The language quoted is clear and explicit and in consonance with the terms of the statute, holding that the effect of adverse possession for a statutory period divests the title out of all other persons and vests it fully in such possessor.

A title by limitation constitutes a chain of title from the sovereignty of the soil, otherwise it would not support an action of trespass to try title. In the case of Keys v. Mason, 44 Texas, on page 142, Judge Moore said: "It is true that the possession of the defendant entitles him to a judgment against the plaintiff, unless the latter shows a prima facie title. He does this when he deraigns title from the sovereignty of the soil down to himself; or if he shows title out of the government and subsequent possession for sufficient length of time to toll the right of entry." The point was not involved in that case, but the dictum asserts a correct proposition of law. A defendant may defend his possession, although it be without title, by showing that some other person has a better title than the plaintiff, upon the principle that the plaintiff in an action to recover lands must succeed upon the strength of his own title and must show a claim good against the world. It being true that a title by limitation may be used as outstanding title for defense of possession merely and will defeat a regular paper title, it follows that title by limitation is superior to all other claims to that land.

The decisions have added little if anything to the forcible language of the article itself, for it clearly and distinctly provides, that "the person having such peaceable and adverse possession shall be held to have full title, precluding all claims." Full title embraces legal and equitable title to the property and comprehends that which passed from the government by patent, consequently, if limitation confers full title upon the possessor, then it must divest title out of all other claimants and vest the same in the possessor under the claim of limitation. It could not be that full title would be vested by limitation in the defendants in error, and yet there would be any title remaining in the plaintiffs in error. We conclude that the effect of limitation was to divest the naked legal title, which the plaintiffs in error had under the patent, out of them and to vest it in the defendants in error, who held the equitable title, and the plaintiffs in error occupy just the same position as if they had parted with their legal title by conveyance to the owners of the equitable title; they had no title to the land, therefore their three years possession did not have the effect to bar the claim and right of the defendants in error.

Whether a trustee who holds title for another can, by repudiating

the trust, convert the trust into title in himself, which would support three years limitation, is not before us and is not decided.

It is ordered that the judgments of the District Court and of the Court of Civil Appeals be in all things affirmed, and that the defendants in error recover all costs from the plaintiffs in error.

*Affirmed.*

Justice Williams did not sit in this case.