## B. F. HUGHES v. W. J. B. ADAMS ET AL.

### Decided April 12, 1909.

**1.—Actions—Misjoinder—Plea in Abatement.**

A. entered into a contract to sell to H. all the timber upon several tracts of land owned by A.; B. at the same time entered into a contract to sell to H. a certain tract of land, and to this end conveyed the same to A. with the understanding that A. would convey to H. A. refused to execute either contract; in an action by H. against A. and B. for breach of the contracts, held, that a plea in abatement directed against a misjoinder of parties and causes of action was properly sustained.

**2.—Contract of Sale—Interest in Real Property—Sufficiency of Description— Case Distinguished.**

A contract for the sale of growing timber described the subject matter of the contract as "all of the timber on our lands situated in the southern part of Jasper County, Texas." In an action for damages for breach of said contract to convey, plaintiff's petition set out a full and definite description of five tracts of timber land owned by defendants' and alleged them to be the subject matter of the contract; the petition further alleged that Jasper County was about seventy miles north and south, and about twenty miles east and west, that the lands so described were near the south line of the county, and that defendants owned no other lands in said county lying nearer than twenty-five miles of said south line. Held, an exception to the petition upon the ground that the description of the lands upon which the timber to be conveyed was located was insufficient, and that it was not competent to aid such description by averments, was not good and should have been overruled. Penn v. Yellow Pine Lumber Co. 35 Texas Civ. App. 181, distinguished.

**3.—County Boundaries—Judicial Notice.**

The courts will take judicial notice of the boundaries of a county and of its geographical shape.

**4.—Contract—Construction.**

In a contract for the sale of growing timber, the expression "all of the timber on our lands" necessarily included the timber on all the lands owned by the parties executing the contract and referred to therein.

**5.—Contract of Sale—Duty of Parties—Breach—Defense.**

Where by the terms of a contract for the sale of timber upon land, the vendor was to deliver the title to the timber by a certain date and the vendee was thereupon to pay the purchase money, the vendee was not required to make any demand upon the vendor that he comply with such provision of the contract, before suing for breach of the same. And an answer that the vendee depended upon a resale of the timber to get the money to pay for the same, constituted no defense.

**6.—Contract—Breach—Evidence—Pleading.**

In an action based upon a breach of a contract for the sale of an interest in land, it was proper for plaintiff to plead and prove as tending to show an intentional breach of the contract that, although defendants failed to tender the title within the time specified, and the title tendered was defective, plaintiff offered to extend the time and to assist in perfecting the title, or to accept a general warranty deed to the land notwithstanding the delay and defects.

**7.—Contract of Sale—Defective Title—Waiver.**

When a vendor cannot make such title as he contracted to make, the vendee has the right to waive the requirements of the contract in that respect and to accept such title as the vendor can make.

8.—Contract—Sale of Land—Merchantable Title—Parol Evidence—Estoppel.

Although a contract in writing for the sale of an interest in land, required the vendor to execute a merchantable title to the same, it was competent for the vendor to plead and prove that he was induced to sign the contract by the representation of the vendee that by the expression "merchantable title" was meant a general warranty deed from the vendor. The vendee would be estopped to say that the vendor had no right to rely upon his assurance of the meaning of the expression as used in the contract. The exact meaning of said expression is not certain and it has been the subject of much discussion and many decisions.

Appeal from the District Court of Jefferson County. Tried below before Hon. L. B. Hightower, Jr.

*F. J. Duff, R. A. John, John T. Beaty* and *Davis & Davidson,* for appellant.—A description which may be made certain by application of known or ascertainable facts is sufficiently certain to convey land by deed or to bind the owner by a contract to convey. Taffinder et al. v. Merrill et al., 95 Texas, 95, 99, 101; Cunyus v. Hooks Lumber Co., 48 S. W., 1106, 1107; Hermann v. Likens et al., 90 Texas, 449-452; Clopper v. Sage, 37 S. W., 363-4; Harris v. Broiles et al., 22 S. W., 421-2; Smith v. Westall, 76 Texas, 509-10-11; Smith v. Wilson (Mo.), 61 S. W., 597.

That a sale of standing timber is a sale of chattels: Boykin v. Rosenfield, 69 Texas, 115; Asher Lumber Co. v. Cornett, 58 S. W., 438; Kingsby v. Halbrook, 86 Am. Dec., 481; 28 Am. & Eng. Ency. of Law (new ed.), 541.

That parol evidence is admissible to aid description in sale of chattels: Smith v. T. & N. O. R. R. Co., 108 S. W., 819; Ft. Worth Natl. Bank v. Red River Natl. Bank, 84 Texas, 369, 19 S. W., 517; Ullman v. Babcock, 63 Texas, 68; Ellis v. Cockran, 8 Texas Civ. App., 510, 28 S. W., 243; Marshall v. Gridley, 46 Ill., 247; Morgan v. Spangler, 14 Ohio St., 102; Jones on Chattel Mortgages, secs. 53-54-55a.

Where under a written contract it is necessary for one party in order to comply therewith to do a certain act, his failure to do so is a breach of the contract, and it is not necessary for the party who is not in default to either demand performance or do any further act under the contract. 26 Am. & Eng. Ency. of Law (new ed.), p. 45, and authorities cited.

Where all the parties to a contract are able to read and write, and none of them occupy towards the others a fiduciary or trust relationship, and the words of the contract are plain and unambiguous, neither party will be heard in the absence of allegations of fraud or mistake, to say that he did not understand the plain import and meaning of the language used. Bruner v. Strong, 61 Texas, 557; Wooters v. I. & G. N. R. R. Co., 54 Texas, 299; Faires v. Cockrell, 29 S. W., 672; Byars v. Byars, 32 S. W., 926; Galveston, H. & S. A. R. R. Co. v. Pfeiffer, 56 Texas, 71; Parker v. American Exchange Bank, 27 S. W., 1073; Gillispie v. Brown, 30 S. W., 449; Bowen v. Hatch, 34 S. W., 331-3; Foote v. Frost, 39 S. W., 329.

*W. W. Blake, M. S. Duffie* and *E. A. McDowell,* for appellees.—The plea in abatement is the proper remedy when different and distinct

causes of action against different parties are improperly joined in the same petition; and the court did not err in sustaining defendant's exception on the ground of misjoinder of parties and causes of action. Hartford Fire Ins. Co. v. Post, 62 S. W., 141; Oglesby's Sureties v. State, 73 Texas, 660; Contlett v. U. S. Mortgage Co., 60 S. W., 820; McDaniel et al. v. Chieska, 57 S. W., 922; Hays v. Perkins et al., 54 S. W., 1071; Green, sec. 881 and 882.

A contract to convey realty to be sufficient under the statute of frauds must describe the lands to be conveyed with sufficient certainty to identify same, or itself furnish the means by which the same may be done. And if the ambiguity appears on the face of the instrument the same can not be aided by allegation or oral proof. Penn v. Yellow Pine Lumber Co., 79 S. W., 842 and 843; Carmack v. Prather, 74 S. W., 354; Sullivan v. Zanderson, 42 S. W., 1027; Jones v. Carder, 59 Texas, 293; Ragsdale v. Mays, 65 Texas, 255; Pathon v. Rucker, 29 Texas, 409; Morrison v. Hazzard, 88 S. W., 385; Grafton v. Cummings, 99 U. S., 100.

A contract for the sale of growing timber is a contract for an interest in land, and in order to be valid and binding must itself describe the lands with sufficient certainty to identify it, or by its terms point out the means by which it can be identified. And if the contract can be at all construed as a license, then it is subject to revocation at any time before the timber is removed. Owens v. Lewis (Ind.), 15 Am. Rep., 295; Slocum v. Seymore (N. J.), 13 Am. Rep., 432; Wiggins v. Jackson, 73 S. W., 779; Mine La Motte Lead & Smelting Co. v. White, 80 S. W., 356; McGregor v. Brown, 10 N. Y. Court of Appeals, p. 114; Green v. Armstrong, 1 Denio (N. Y.), 500; see subject Statute of Frauds, 20 Cyc., 212; Heflin v. Bigham (Ala.), 28 Am. Rep., 778; Washburn on Real Property, 4th ed., 3d vol., top p. 343, side page 599; 1 Beach on Contracts, 540; Benjamin on Sales, sec. 120, 1st Am. ed.

When a party contracts to sell timber the same being a part of the realty, and is unable to make a good title or such title as is demanded by the purchaser, and the vendor is without fault, the purchaser is not entitled to damages for the loss of his bargain. Hammond v. Hannon, 21 Mich., 374; see note to Hopkins v. Lee, 19 U. S., 5, Lawyers' ed., p. 218; Phillips v. Herndon, 78 Texas, 380.

Relief in equity will be granted when the legal effect of a transaction is misapprehended, if such misapprehension be induced or brought about by misleading statements or acts of the other contracting party; for a court of equity will not permit a person to take advantage of another's ignorance or mistake, even of law, if such person knew of the misapprehension at the time of the contract and did not correct it, for to make the contract under such circumstances would be fraudulent. And parol evidence is admissible to establish the meaning of a phrase used in the contract and the construction and meaning placed thereon by the parties at the time. Lott v. Kaiser, 61 Texas, 671; Ramey v. Allison, 64 Texas, 700; Culbertson v. Blanchard, 79 Texas, 491-2; Moreland v. Atchison, 19 Texas, 309.

REESE, ASSOCIATE JUSTICE.—This is a suit by B. F. Hughes

against W. J. B. Adams, R. F. Adams and Abel Adams, and W. W. Blake to recover damages for breach of a contract by Adams to convey timber, and by Blake to convey land. The court having sustained a plea in abatement directed at the misjoinder of W. W. Blake, and also misjoinder of the cause of action upon the contract executed by him, plaintiff, having excepted to such ruling, filed his third amended petition, on which the case was tried, eliminating Blake and the cause of action based on the contract executed by him. The court sustained certain demurrers to the petition and, plaintiff declining to amend, rendered judgment dismissing the suit, from which judgment plaintiff appeals.

The pleadings are voluminous and are set out at great length in appellant's brief. So much thereof as may be material to a full understanding of the case as here presented will be stated in passing upon the assignments of error, which are addressed to the action of the court in sustaining the plea in abatement and the several special demurrers.

The first assignment of error is addressed to the ruling of the court in sustaining the plea in abatement for misjoinder of parties and causes of action. Appellant sued upon two contracts, one for the sale and conveyance of timber upon lands belonging to Adams, executed by the three Adamses, and the other a contract by Blake for the sale and conveyance of a tract of land. With regard to this latter contract it was alleged that Blake did not at the time of the contract own the tract of land to be conveyed, but that at his instance it was conveyed to the Adams brothers "for the purpose of the contract entered into by Blake," and that Adams had knowledge of said contract and took the title charged with its performance. The other contract was a contract executed by the Adams brothers to sell and convey to appellant "all the timber on our lands in the southern part of Jasper County." The only proposition stated by appellant under this assignment is that "where the owner of property, the legal title to which is in another, contracts to sell, and then designates a third party to whom the title is conveyed with knowledge of the contract to sell for the purpose of carrying it out, and such third party disregarding the contract, sells to a stranger and thus renders it impossible to perform the owner's contract, he becomes liable to the purchaser for damages." In substance, the proposition is that Adams brothers are liable to appellant for damages for breach of the Blake contract. The court did not hold otherwise, but only that this cause of action against Blake and the Adams brothers could not properly be joined with the other cause of action against the latter upon the other contract for conveyance of timber upon other lands owned by Adams brothers. This is the only question presented by the ruling, and we think there was no error in sustaining the plea. (Stewart v. Gordon, 65 Texas, 347; Hartford Fire Ins. Co. v. Post, 25 Texas Civ. App., 428.)

The second, third, fourth and fifth assignments of error complain of the ruling of the court in sustaining certain special demurrers, each presenting the general objection to the petition that the contract

executed by Adams brothers was unenforceable and void under the statute of frauds because it fails sufficiently to describe the lands, the timber upon which is contracted to be sold by Adams brothers to appellant, and the petition, in so far as it attempts to give a description of said lands, is an attempt to vary, change and enlarge the terms of a written contract, contrary to the statute of frauds. These special demurrers present in different forms the general objection that there is no such definite description of the lands, upon which the timber to be conveyed is located, as is necessary to a valid contract, and that it was not competent for appellant to help out this insufficiency of description by special averments in his petition, and further, that with the aid of these special averments the description was still insufficient.

The property which was the subject matter of the contract is thus described: "All of the timber on our lands situated in the southern part of Jasper County, Texas." Whether this is a contract for the sale of real estate or an interest therein, required by the statute of frauds to be in writing, it is not necessary for us to decide in the view we take of the question here presented. There is great conflict in the authorities upon the question. In Boykin v. Rosenfield (69 Texas, 118), it is stated that "a mortgage of trees to be cut and removed from the freehold, or a mortgage of growing timber by one who has purchased the same, to be cut and removed from the freehold, is a mortgage of personal property and will avail the mortgagee if it be recorded as a chattel mortgage." In the present contract appellant was to have fifteen years within which to remove the timber. To what extent, if to any, the doctrine announced so broadly in the case cited should be modified by the facts of the particular case before the court, it is not necessary for us to decide. Treating the contract as one for the sale of an interest in real estate, as contended for by appellees, we think that the contract is not void for want of sufficient description of the property, and that taken in connection with the allegations of the petition there is no difficulty in determining what property is conveyed. It was alleged in the petition that Jasper County is about seventy miles long from north to south and about twenty miles wide from east to west; that appellees owned five certain surveys of timbered land in the extreme southern part of the county, the south line of some of the surveys abutting on the south line of the county; that all of these surveys were within three or four miles of said southern boundary of the county, and that appellees own no other lands in said county lying in less than twenty-five or thirty miles of said south line of the county. The petition set out a full and definite description of the five tracts of timber lands owned by appellees and alleged to be the subject matter of the contract. If the contract had been one to convey all the lands owned by them in Jasper County it could not be questioned that the description would be sufficient, and would apply to any or all lands owned by the vendor and so located. (Witt v. Harlan, 66 Texas, 661; Garner v. Boyle, 97 Texas, 465.)

Independently of the allegations of the petition the court will take judicial notice of the boundaries of Jasper County and of its geo-

graphical shape, that is, that it is very much longer from north to south than it is wide from east to west; so shaped, in fact, that its southern part as distinguished from its middle or northern part, as those terms are commonly used, would designate the locality of the land referred to with sufficient definiteness to bring. it within the doctrine of the cases referred to, unless it should appear that the land to which it was sought to apply the description was so located that it could not be said with any definiteness that it was located in the southern rather than in the middle or northern part of the county. But according to the allegations of the petition there is no such indefiniteness. Appellees owned five surveys of timbered land in the extreme southern part of the county, some of them abutting on the south line and all of them within three or four miles thereof, and owned no other land in the southern part of the county or less than twenty-five or thirty miles of said tracts.

We think there is no merit in the contention of appellees that the contract does not embrace in the description "all the timber on *all* of our lands." The language of the contract is "all of the timber on our lands," etc. This necessarily included the timber on all of the lands so owned by appellees.

Appellees rely upon the case of Penn v. Yellow Pine Lumber Co., decided by this court (35 Texas Civ. App., 181). In that case the land was described as "6100 acres under consideration in Tyler County." The petition described several surveys of land in Tyler County, aggregating 6100 acres, and alleged that they constituted the land under consideration by the parties and were mutually understood by the parties to be the land embraced in the contract. The contract appears to have been for the sale of the land. The defendant specially demurred to the petition on the ground that the description was insufficient, which was sustained by the trial court. The following language from the opinion of the court shows that that case is clearly distinguishable from the recent case:

"The only language in the contract descriptive of the land agreed to be sold is 'the 6100 acres under consideration, in Tyler County.' This language only informs us that the land contracted to be sold is situate in Tyler County, and consists of 6100 acres, and it is manifest that the land can not be identified from this description. The words 'under consideration' add nothing to the description of the land, since they only refer to the mental attitude of the parties toward the land, which, from the allegations of the petition, is only susceptible of proof by parol. To permit the appellant to show by parol what land was under consideration would be, in effect, to abrogate the rule requiring contracts for the sale of land to be in writing. If the appellant's contention is sound the contract would be enforceable if it only described the land as that 'under consideration,' since the designation of the number of acres and the county in which the land is situate is clearly insufficient to identify it with reasonable certainty, and the entire description must be supplied by parol proof showing what land was under consideration by the parties. We think the cases of Cunyus v. Lumber Co., 20 Texas Civ. App., 290, and Taf-

finder v. Merrell, 95 Texas, 95, cited by appellant, are easily distinguishable from the present case. In the cases cited the description was held sufficient because the extrinsic facts alleged and proven eliminated all ambiguity therefrom, and made the identity of the land certain from the description contained in the deed. In the present case the extrinsic facts alleged in the petition, and which are only susceptible of proof by parol, must be looked to primarily to obtain a description sufficient to identify the land."

The location of the lands as in the southern part of Jasper County, we think, is, substantially, as definite as though they were described as in Jasper County, and when this is taken in connection with the description as "our lands," that is, "all our lands" in that locality, it remained only to show what lands situated there were owned by appellees, and this was clearly shown by the allegations of the petition. (Witt v. Harlan, *supra;* Garner v. Boyle, *supra;* Hermann v. Likens, 90 Texas, 449; Baxter v. Yarborough, 46 Texas, 231; Smith v. Westall, 76 Texas, 509.) We think the court erred in sustaining the special demurrers referred to.

The trial court also erred in sustaining the special demurrer set out in paragraph seven of the second amended original answer, as set out in the sixth assignment of error. By the terms of the contract appellees were to deliver into the bank a merchantable title to the timber to appellant by February 1, 1907, whereupon appellant was to pay into the bank the balance of the purchase price. Appellant was not required to make any further demand upon appellees to comply with this provision of the contract. There is no merit in appellees' contention under this assignment, that appellant depended upon a sale of the timber to the Nona Mills Company to get the money to pay for the timber. (Clarke v. Wilson, 41 Texas Civ. App., 450.)

By the terms of the contract appellees were to deliver a "merchantable" title to the timber. In his second amended original petition appellant alleged that appellees had failed to deliver a "good, merchantable title." If there is any distinction between a "merchantable" title and a "good, merchantable" title the variance was cured by the third amended petition in which appellees are alleged to have failed to deliver a "merchantable title" to the timber.

We are of the opinion that the court erred in sustaining the special demurrer to the petition contained in paragraphs eight and nine of the second amended original answer, as set out in the seventh and eighth assignments of error. The obligation of appellees was to furnish appellant a merchantable title to the timber. It was alleged in the petition that the title furnished was defective, but that appellant offered to extend the time, and to cooperate with appellees in curing the defects, and further, it was alleged that if appellees were not able to cure the defects, appellant would nevertheless demand and require a general warranty deed to the timber in the condition in which their titles were. These were all proper matters to be alleged and proven, as tending to show an intentional breach of the contract by appellees.

From what has been said it appears that the court erred in sus-

taining the special demurrer contained in paragraph twelve of the second amended original answer as set out in the ninth assignment of error. Upon the question presented we think the law is correctly stated in the proposition of appellant under this assignment. "While the purchaser under a contract of sale has the right to demand of the seller such a title as called for in the contract, he nevertheless has the right, if the seller can not deliver such a title as he contracted to deliver, to take such title as the seller has."

Appellees alleged in their answer that they told appellant at the time of the making of the contract that there were defects in their title which they could not remedy, but appellant said that he would take the timber anyhow; that thereupon appellant drew the contract and when the same was presented to appellees they called attention to the fact that their titles were defective as disclosed by the records of Jasper County, and if the clause requiring them to furnish a merchantable title meant a perfect title or one good on the records, they would not sign the contract because they could not furnish such title. Appellees then asked appellant what was meant by "merchantable title," and told him if what was meant was their general warranty deed they would sign the contract, whereupon they were answered by appellant that their general warranty deed was all he wanted and that was what was meant by "merchantable title," upon which they relied and by which they were induced to sign the contract. It was alleged that appellees did not know what was meant by "merchantable title" until assured by appellant as aforesaid. The court overruled an exception by appellant to these allegations of the answer, which is complained of by the tenth, eleventh and twelfth assignments of error.

There was no error in the ruling. The terms "merchantable title" are not of such clear and definite meaning as that appellees will not be allowed to say that they were ignorant of their meaning and relied upon the assurance of appellant as to the sense in which they were used in the contract. They do not necessarily import a clear and perfect record title. In fact, as used in regard to conveyances of land it is a technical term, the exact meaning of which has been the subject of much discussion and innumerable judicial decisions. (Maupin on Marketable Titles, 673; 5 Words and Phrases, Title, Marketable Title; Roberts & Corley v. McFaddin, 32 Texas Civ. App., 47.) It has been held that a limitation title, where the owner is clearly barred, is a merchantable title. (Hedderly v. Johnson, 44 N. W., 528.)

It was competent for appellees to allege and prove that they were induced to sign the contract by the representation of appellant as to the meaning of the term. (Lott v. Kaiser, 61 Texas, 671.) If the allegations of the answer are true, upon every principle of equity appellant would be estopped to say that appellees had no right to rely upon his assurance of the meaning of the terms as used in this contract.

If it be established that these allegations of the answer are true, then not only did appellant have a right to accept the general warranty deed of appellees, but he was bound to do so, and if they ten-

dered him such deed and he refused to accept it, they were not required to do anything more.

For the errors indicated the judgment is reversed and the cause remanded.

*Reversed and remanded.*