**BLOMSTROM et al. v. WELLS. (No. 6707.)**[*]

(Court of Civil Appeals' of Texas. San Antonio. March 1, 1922. Rehearing Denied March 29, 1922.)

**1. Constitutional law ☞188—Legislature may legislate retrospectively as well as prospectively if rights of third parties not involved.**

Eliminating the rights of third parties, the Legislature has the same power to enact laws retrospectively as it has to legislate prospectively.

**2. Adverse possession ☞106(1)—Title by limitations good when established.**

Under Rev. St. art. 5679, a title by limitation is as good as the best when established.

**3. Vendor and purchaser ☞137—Purchaser may specify character of title that he will accept and that it is to be approved by counsel.**

A purchaser in a contract to purchase land has the right to specify the character of title that will suit him, and to be advised by his attorney as to whether the contract furnished meets the condition, and unless the seller complies therewith, he cannot compel a performance.

**4. Vendor and purchaser ☞130(7)—Purchaser held not compelled to accept limitation title requiring suit to perfect.**

Under a contract for the sale of land providing for a merchantable title, the purchaser could not be compelled to accept a limitation title which would require a suit to quiet title to perfect.

**5. Vendor and purchaser ☞130(2)—Title which must be supported by parol testimony not "marketable title."**

A proposed purchaser under a contract to supply a "marketable title" cannot be compelled to accept a title which has to be supported aliunde the record by parol testimony difficult to assemble in support thereof.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Marketable Title.]

Appeal from District. Court, Nueces County; W. B. Hopkins, Judge.

---

Action by George A. Wells against C. J. Blomstrom and others. Judgment for plaintiff, and defendants appeal. Affirmed.

Boone, Pope & Savage, of Corpus Christi, for appellants.

J. D. Todd, of Corpus Christi, and T. O. Woldert, of Houston, for appellee.

COBBS, J. Appellee sued to recover from appellants the sum of $1,000, deposited in the City National Bank of Corpus Christi as earnest money upon a contract to purchase a tract of land from C. J. Blomstrom, one of the appellants.

It was alleged: That Blomstrom was to furnish a merchantable title, apparent upon the abstract, subject to the approval of the attorneys for appellee, which agreement Blomstrom failed to comply with. That the said money which had been deposited by appellee in the bank as custodian was paid to appellant Garrett who refused to return it to appellee. That the abstract furnished was not in compliance with the contract, nor did it show a merchantable title, but at most a mere limitation title which appellee's attorney in good faith rejected.

The answer of appellant Blomstrom consisted of general denial, pleas of limitation, and specially averred a compliance with the contract, averring that the abstract was furnished and the deed and title were accepted by the bank, and the money paid over to him as liquidated damages when appellee declined to accept the title appellant Blomstrom tendered, in all respects as having complied with the terms of the agreement. In the alternative also pleaded he had furnished an abstract showing a merchantable title as agreed, which his attorney examined and at first made no specific objections to, nor pointed out any defects, but, subsequently, upon appellant's specific demand, did point out certain objections, but gave appellants no opportunity to remedy. That the abstract was made by appellee's attorney and accepted by appellee's attorney, who admitted it showed a limitation title, so appellee was estopped by such admission to assert the title was not merchantable, and by cross-action prayed for the recovery of the $1,000. Garrett and City National Bank adopted the answer of appellant as their own.

The case was tried by the court without a jury, and after hearing the case the court rendered judgment in favor of appellee against all the defendants for the sum of $1,449 with 6 per cent. interest per annum from the date of the judgment. At the request of appellants the court made and filed conclusions of fact and conclusions of law.

There are a number of assignments challenging the court's conclusions from the facts and his conclusions of law, all of which we will consider, but not in the order presented.

The first one we will take up is as to whether under the testimony introduced in connection with the court's findings, the abstract furnished on its face a merchantable title.

It will be noted that the contract calls for a "merchantable title." Maupin on Marketable Title to Real Estate, the book above all others devoted to that one subject, nowhere writes on the subject of "merchantable title." Turning to Words and Phrases Judicially Defined, First and Second Series, it, like Maupin, treats of and well defines "marketable title to lands," and "good and marketable title." It, unlike Maupin, because it proposes to define legal terms, does define "merchantable," "good and merchantable cattle," "merchantable order," "merchantable quality," and other like terms, always applying "merchantable title" to personal property, which accounts, no doubt, for the fact that Mr. Maupin does not use that word as applicable to land titles, because he is treating solely of title to lands. However, we do find those terms used in some of the decisions synonymously, and as the parties here seem to treat the agreement as providing for a marketable title to land, though designated "merchantable title," we feel compelled, however, as we view the different terms, to call it "marketable title," as we believe they so understood it.

There are two prominent grounds presented in the agreement of the parties; that is, was a limitation title to be taken and considered as a merchantable title within the terms of the contract, and was that limitation title to be apparent from the abstract itself, or to be further supported by oral proof? The attorney admitted a title was shown by limitation, but that it did not appear from the abstract itself, and as to it he declined to accept the title because it was not a marketable title.

Examining many of the chains of transfer, to which objection has been made because of defective acknowledgments, it will be noted that the Legislature has passed many curative acts on the subject and actuated by a commendable desire to cure defectively acknowledged instruments that had been on record for years, where no adverse claim was asserted during that period of time, such instruments were made admissible in evidence notwithstanding they were defectively acknowledged and recorded though would not otherwise be admissible in evidence. Such statute was held valid in George E. Downs, Plaintiff in Error, v. E. A. Blount et al., Defendants in Error, 170 Fed. 15, 95 C. C. A. 289. See 31 L. R. A. (N. S.) p. 1076 and notes cited. The Supreme Court of the United States in that case refused an application for writ of certiorari, thereby approving the ruling of the Circuit Court of Appeals. While this case being one of first impression in the construction of that new statute in the federal court, our own Supreme Court not having construed that statute, an ef-

fort was made to pass one up to our Supreme Court, in a race of diligence, and when it did get there Judge Williams, in Holland v. Votaw, 103 Tex. 535, 131 S. W. 406, speaking for the court, did not take issue with Downs v. Blount; but his refusal of the writ is rather by avoidance.

[1] However, in the foregoing expressions in regard to the effect of conveyances cured by the Act of April 23, 1907 (Laws 1907, c. 165), amending article 2312 of the Revised Statutes, the legislation above referred to, it is not to be understood that the writer of this is attempting to commit his associates to his views, for it may be called dictum as not really necessary to the disposition of this case. The Supreme Court, however, speaking through Judge Williams, did hold that such instruments may be, in the proper case, used in evidence. It was never contended for a moment that the Legislature by its acts would or could destroy vested rights or those of third parties. Eliminating the rights of third parties, the Legislature has the same power to enact laws retrospectively as it did have to legislate prospectively. Morris & Cummins v. State ex rel. Gussett, 62 Tex. 729. It had the right to prescribe what was requisite to a valid acknowledgment. Such instruments would be, however, admissible in evidence before the court, is likewise the holding in Holland v. Votaw, supra. This holding, however, it is not necessary to dispose of in this case, because the objections to defective acknowledgments constituted only a part of the numerous objections that require evidence aliunde the record to sustain limitation title. Independent of the evidence aliunde, the abstract required to sustain a limitation title should show a merchantable title.

[2] In the case of Hughes v. Adams, 55 Tex. Civ. App. 197, 119 S. W. 134, cited by appellants, Judge Reese is very properly defining "merchantable" as he is applying it to logs and logging, personal property. In this case it was stated that the words "merchantable title" meant "their general warranty deed," whereupon they were answered by appellant that their general warranty was all they wanted, and the court said appellant was bound to accept the general warranty deed of appellee and if tendered and refused were not compelled to do more. In defining "merchantable title," Judge Reese refers to Maupin on Marketable Title, 673, Words and Phrases, First and Second Series, and Roberts & Corley v. McFadden, 32 Tex. Civ. App. 47, 74 S. W. 105. In neither of those cases is the words "marketable title" used. Let us, however, use the words "marketable title," for that is what is meant, in the discussion, and state the proposition conversely: When is a limitation title a marketable title? Surely, under our statute, a limitation title is as good as the best when established, for adverse possession for the requisite time "shall be held to have full title precluding all claims." R. S. art. 5679; Burton's Heirs v. Carroll, 96 Tex. 320, 72 S. W. 581. As we understand it, from this admission of Mr. Todd, the attorney for appellee selected to pass upon the title, while admitting it to be a limitation title, denied that it was a marketable title for the reason that it would require proof to establish it, and insisted a suit would be necessary to perfect it. The court found from the evidence that Mr. Todd, the attorney, after examining the abstract, rejected the same because it did not show a marketable title, and further found that Mr. Todd was acting in good faith, and that there was no time limit placed on the examination of the title to be made, nor any time in which corrections were to be made. Mr. Todd placed in writing at the request of appellant the numerous objections thereto. It was ultimately narrowed down to the question between the parties in their discussion to a limitation title, and for that reason alone Todd declined to approve it, and his objection became conclusive. In other words, the effect of this latter conclusion by the court would mean that Mr. Todd was made the arbitrator by both parties to finally determine the matter, and from which, in the absence of fraud or arbitrary action, all parties would be bound by his opinion. This latter conclusion of the court is not a legitimate deduction from the evidence. Todd was not made the arbitrator so as to bind appellants, but was the agent and attorney of and for appellee only, upon whose judgment and conclusion the appellee alone would act, which was well known and acted upon by appellant's counsel.

[3] To set out the abstract of title presented or all the objections urged to the title would cover many pages and would serve no useful purpose. There was no demand or effort made by the appellants to cure the title to the satisfaction of appellee's attorney so as to make it a marketable title after they made the demand for such objections to be given. In fact, they only attempted by conferences to induce the attorney, Todd, of the supposed error in his position and get him to recede. They did secure the admission from him it was a limitation title, but never that it showed a marketable title, but that a suit was required to remove therefrom the alleged cloud. Even after hearing the case on its merits, considering the record title and the evidence introduced the court found that it did not show a marketable title such as appellants insisted was presented or as required by Todd, the attorney. There was no issue presented to the jury, or found by the court, after hearing all the facts, that it showed title in appellee by limitations, though it might have. But the case was tried, and rightfully so, upon the theory that the abstract of title showed no marketable title, though it was admitted by Mr. Todd it

might show a limitation title. If Mr. Todd's admission had not been coupled with the other question of nonmarketable title, the question would have been much more simplified. The ordinary mind does not understand the meaning of the term "marketable title." Hughes v. Adams, 55 Tex. Civ. App. 197, 119 S. W. 134. A purchaser in the contract to purchase land has the right to specify the character of title that will suit him and be advised by his attorney as to whether the abstract furnished meets the condition, and unless the seller complies therewith he cannot compel a performance. Hester v. Shuster, 234 S. W. 713; Greer v. International Stock Yards Co., 43 Tex. Civ. App. 370, 96 S. W. 82. This is from this court, opinion by the late Justice Neill, in which it is said such a title must be one such as can be proved good as a matter of law not depending on a question of fact, and where the title is shown by limitations the purchaser is not bound to perform the contract. Mr. Maupin on Marketable Title, § 282 (2d Ed.) p. 725, says

"If the contract provides that the abstract shall show a marketable title, the vendor will not be permitted to show by evidence aliunde that the title is good, nor will the purchaser be required to go outside of the abstract in examining title." Id., § 289, p. 728.

In Words and Phrases, Judicially Defined, First and Second Series, under the term "Marketable Title," a well-considered definition is given on page 4389. See, also, Roberts & Corley v. McFadden, Weiss & Kyle, 32 Tex. Civ. App. 47, 74 S. W. 105.

Appellant in his brief says the abstract tendered consisted of some 144 pages of various instruments down to J. E. Garrett from whom appellee Blomstrom had a deed, with the exception of a small tract of 27 acres, without copying or otherwise referring to the numerous objections pointed out by Mr. Todd upon whom appellee was relying for advice, Mr. Todd finally advised him, among a number of things, to wit:

"These are our recommendations as to this title: That Garrett and Stromberg bring suit in the district court here against all the former owners of this land and their unknown heirs, and secure a judgment against them for same, and have the judgment filed in the deed records. This will take some six months to finally close up, and will cost anywhere from $250 to $500, but it would be better for them to do it, and bear the expense of it, than for you to have to do it yourself. Should you accept a deed to the land from Mr. Garret, there are a number of people on warranties before he got the land who are responsible, and could protect you against loss, but unless some one brought suit or otherwise brought the title into question, you would have no cause of action against them on their warranties; hence in order to sell you might have to bring the action 1 speak of against the former owners and their unknown heirs, and pay the expenses of it yourself, without having any recourse against your warrantors to make the title good.

"You might take up with these people this matter and ascertain what they will do along the lines mentioned. In my judgment, if they ever try to sell this land with a complete abstract of title on it such as we have prepared, the title will be questioned; and for this reason we would not advise you to accept the title unless they will bring the suit mentioned. We stand ready to assist you in any way we can."

[4] Under the circumstances, it would be inconceivable that a purchaser would accept, or be required to accept, such a title as marketable, being advised by his own attorney not to do so. Under the facts in this case and the findings of the court, appellant could not compel the appellee to accept this title as a marketable title, supported by limitations. It would, of course, have been different if in the contract it had been specifically stipulated for a marketable title such as could be established by proof of limitations; but the contract does not so stipulate. In such a case proof aliunde the record would be sufficient grounds to predicate specific performance. But it could not be done under such an agreement as is here set out.

[5] If Todd had unqualifiedly agreed for his client to accept that title as one shown to be a marketable title by limitations, that would end the inquiry; but he denied that, and the court found with him, and the evidence supports the finding. It is very apparent that Mr. Todd in his relation of trust and confidence as attorney for his client was unwilling to accept the title as a marketable title unless the cloud was removed by suit, which appellants seemed unwilling to do and withdrew the money from the bank, apparently being perfectly satisfied with his own title. You cannot force a proposed purchaser to accept a title upon a contract to supply a marketable title, when that title has to be supported aliunde the record by parol testimony difficult to assemble in support of the same. But there are many instances, such as inheritance, limitation, etc., that nearly always are proven by parol testimony, when easily accessible, as well as such facts as the failure to record because the registration laws do not provide for such registration. There is no reason for the purchaser to decline to carry out his contract if the facts are made to appear with such probative force and certainty, accessible and very easily secured so as to easily satisfy any reasonably prudent person that the title is good. That would bring it within the meaning of marketable title. Burton's Heirs v. Carroll, 96 Tex. 320, 72 S. W. 581; Hollifield v. Landrum, 31 Tex. Civ. App. 187, 71 S. W. 981; Greer v. International Stock Yards, 43 Tex. Civ. App. 370, 96 S. W. 79; Hughes v. Adams, 55 Tex. Civ. App. 197, 119 S. W. 137; Clark v. Asbury (Tex. Civ. App.) 134 S. W. 288; Wake-

land v. Robertson (Tex. Civ. App.) 219 S. W. 842; Lieber v. Nicholson et al. (Tex. Civ. App.) 206 S. W. 512; Justice v. Bulton et al., 89 Neb. 367, 131 N. W. 736, 38 L. R. A. (N. S.) 1. See, especially, the notes.

The conclusion reached by us is that the court's findings are supported by the evidence. Mr. Todd was selected by appellee as a lawyer learned in the law to determine whether the title offered, shown by the record, was a marketable one. Appellants dealt with him as such with the full knowledge that Mr. Todd's judgment would control. While, as said in Lieber v. Nicholson, supra, it was as much the duty of the purchaser to point out the objections as it was the duty of the seller to present an abstract showing a marketable title. Appellee did this and demanded that the cloud be removed by a suit, which appellants declined to do. Mr. Todd thought that requisite and was unwilling to pass this as a marketable title. The authorities cited by each party on the subject, and many more read by us as to what constitutes a marketable title to land, are harmonious and without conflict, and support the view of the trial judge, and support, as set forth herein, the views we take of the law.

We have reached the conclusion that there is no substantial error committed, and the judgment is affirmed.