## Oliver C. Abell v. Lewis R. Munson.

*Practice in Circuit Court: Meaning of representations: Jury.* Where there was parol evidence given that a party on transferring a note, represented the note to be "as good as cash, and that the maker was perfectly responsible," and also that it was understood that the note was not to be presented at once, and the evidence of solvency was conflicting, it was properly left to the jury to determine the meaning and extent of these representations, to ascertain whether they were true or not.

*Statute of frauds: Land Contract: Parol evidence: Time of performance.* Under the statute of frauds, which requires all contracts for the sale of lands to be in writing, and makes them void if not written and signed by the vendor, parol evidence cannot be received to show a subsequent verbal agreement to change any of the terms, as no part of the contract can rest in parol.

And where a contract fixes expressly the time of performance, it binds the parties, and no inquiry can be made as to what would have been a reasonable time for such performance.

*Measure of damages: Value of real estate: Evidence.* In estimating the value of land at a given time, testimony of its value a few months after, is admissible to go to the jury, as furnishing some means of guidance. It will not be assumed, without proof, that any great change must have occurred in such an interval.

*Heard April 21, 22.   Decided April 27.*

Error to Wayne Circuit.

This was an action to recover damages for not conveying certain real estate according to the terms of a certain contract.

On the trial, the plaintiff gave evidence tending to

---

*Fry on Specific Performance, 2 Am. Ed. 156, 157, top paging; Hurley v. Brown, 98 Mass. 545, and cases cited.

how that about the tenth of June, 1867, he made a verbal agreement with the defendant for the purchase of lot 16 (hereafter mentioned in written contract), and gave a note against Philetus Howe for $129.25, in full payment for the same; that nothing was said at the time of giving the note to defendant about the pecuniary responsibility of Howe, or about the note being as good as the cash; that before June 10th, he had offered said note against said Howe for said lot, and defendant did not take the note at that time from him, but said he would see about it; that about June 10th, he met defendant again, and defendant said he would take the note for the lot; defendant took the note and agreed to make the contract; that the written contract was to be made by defendant, and handed to him, witness; that said contract was delivered to witness three or four months after its date; and that on June 10th, at the time of stating agreement, it was agreed that the written contract, when drawn, was to be dated back to the time of giving of note by witness to defendant: such was the understanding at the time note was given to defendant. Said contract was as follows:

"Articles of agreement made this 10th day of June, 1867, between Oliver C. Abell, of Wayne County, Michigan, and Lewis Munson, of the town of Nankin, Wayne county, Michigan. The said first party, in consideration of the sum of $129$\frac{25}{100}$ to him paid, hereby agrees to sell unto the said second party, all that certain piece or parcel of land situated and being in the county of Wayne, State of Michigan, and described as follows: Lot No. sixteen (16) in the village of Wayne, in O. C. Abell's addition to said village, and according to the plat thereof, be the contents of said lot more or less, which the said second party has paid the first party for said lot, one hundred and twenty-nine $\frac{25}{100}$ dollars; said payment being a note against Philetus Howe. Said second party also agrees to pay all

taxes and assessments that shall be taxed or assessed on said premises from the date hereof, until said sum shall be fully paid as aforesaid; and the said party of the first part, on receiving such payment at the time, and in the manner above mentioned, shall, at his own proper cost and expense, execute and deliver to said second party, or to his assigns, a good and sufficient warrantee deed, as soon as said first party gets said plat surveyed and recorded.

It is mutually agreed between said parties that the said party of the second part shall have possession of said premises on the first day of September, 1867, and he shall keep the same in as good condition as they are in at the date hereof, until the said sum shall be paid as aforesaid; and if the said party of the second part shall fail to perform this contract, or any part of the same, said party of the first part shall, immediately after such failure, have the right to declare the same void, and retain whatever may have been paid upon such contract and improvements that may have been made on said premises, and may consider and treat the party of the second part as his tenant, holding over without permission, and may take immediate possession of the premises and remove the party of the second part therefrom; and it is agreed that the stipulations aforesaid are to apply to and bind the heirs, executors, administrators, and assigns of the respective parties.

In witness whereof the said parties have hereunto set their hands and seals the day and year first above written.

Signed,                 O. C. ABELL."

That about ten months after date of contract, and six or seven months after its delivery, witness called upon defendant and demanded a deed; that defendant said he wanted to talk with him, and made no other reply; that a few days afterwards he called again, and defendant made same reply; that a few days after that, he called

the third time, and defendant said he had seen Howe, and that Howe said that he himself was not responsible, and was insolvent at the time he, defendant, took note of plaintiff, and was then irresponsible and insolvent, and that the representations which defendant claimed witness made to him were untrue, and that he, defendant, would not give a deed; that witness said to defendant that Howe would not swear to his irresponsibility. Plaintiff also gave testimony tending to show Howe's responsibility; also, that when defendant first spoke about selling the lot, he had a draft of it on paper, and said it was four by eight rods; and when he first spoke to defendant about buying the lot, in June, 1867, defendant said he should have it platted and recorded within three months. Witness having shown himself familiar with the value of land property in Wayne, was asked by counsel for plaintiff what the market value of said lot sixteen was at the time he testified that he demanded the deed, to which question counsel for defendant objected as irrelevant; but said objection was overruled, and counsel for defendant excepted. Witness stated it was worth one hun- hundred and fifty dollars, ( $150. )

The plaintiff further testified that said lot was to be platted and surveyed four rods by eight rods, and the value was estimated by the witnesses on that basis.

Counsel for plaintiff then rested his case.

The defendant, being sworn, gave evidence tending to show that at the time of receiving the note from plain- tiff the plaintiff represented to him that it was good as the cash, and that the maker was perfectly responsible.

That said note was due on demand, but that said plaintiff requested the witness not to call on Howe for payment for three or four months; that at the expiration of three or four months, defendant called upon Howe for payment, and within a week or two afterwards the plain- tiff called on witness for a deed; that defendant informed

plaintiff that he had seen Howe, and that Howe said he was not good for anything when defendant took the note, and plaintiff knew it; that defendant went to plaintiff three or four days before commencement of the suit, and tendered plaintiff the note for the first time, saying to him that it was not worth the paper written on; that plaintiff declined to receive the note, and said to witness that he could not rescind. The defendant then testified that he did not tell plaintiff he would survey and plat said lot in three or four months, or within any time, and further testified as to the efforts made to get said premises, including lot sixteen, surveyed and platted.

Philetus Howe was then sworn, and gave evidence tending to show his solvency.

The charges of the court are stated in the opinion.

Judgment was rendered in favor of plaintiff.

*Moore & Griffin,* and *H. Balus,* for plaintiff in error.

*H. M. & W. E. Cheever,* and *Vining & Minnock,* for defendant in error.

CAMPBELL, J.

Munson sued Abell for not conveying certain property, according to agreement. The defence was that the agreement was obtained by fraud, and without consideration; and also that there had been no default, or none which had not been waived by subsequent agreement.

The consideration paid in advance was a note against one Philetus Howe. Abell claimed and testified that Munson represented this note to be "as good as the cash, and that the maker was perfectly responsible." He testified further, that Munson desired him not to call upon Howe for three or four months. He further testified to calling on Howe, and being informed by him of his insolvency, and to several interviews with Munson in

regard to the matter, and to a joint interview of both with Howe. Howe's testimony showed that he was not insolvent.

It is unnecessary to refer at length to the facts on this part of the case, as the charges show sufficiently upon what footing the court left it.

The judge charged that no recovery could be had, if the note was taken on Munson's representations, and if those representations were untrue, whether he knew their untruth or not. He told the jury that it was for them to determine what was meant by the representations sworn to, and that Abell had a right to rescind within a reasonable time for fraud, if existing, and that he would not be prejudiced by any delay in rescinding caused by the fault of Munson. What was reasonable time, he left to the jury under the circumstances, there being directly contradictory testimony upon all these points.

The rulings of the court in these matters were quite as liberal as Abell could ask. They were some of them based on assumptions which contradicted the written agreement, and which were not admissible. We think there was no error in this part of the case against the rights of Abell.

We think, also, that all the difficulties urged concerning the contract itself, and its breach, arise from the court below allowing a more liberal treatment to plaintiff in error than he was legally entitled to. When the contract is viewed in its true legal aspect, the objections all become incompetent.

The agreement is in writing, dated June 10, 1867, reciting the receipt of the Howe note as an absolute payment for the land contracted, and agreeing to convey "lot numbered sixteen in the village of Wayne, in O. C. Abell's addition to said village, and according to the plat thereof," and to execute a good and sufficient warranty deed, "*as*

*soon as said party of the first part gets said plat surveyed and recorded.*"   The contract further stipulated that Munson should have possession on the first day of September, 1867.

There was testimony tending to show that while the contract was agreed upon at its date, and the consideration then paid, yet in fact it was delivered some three months after its date, but dated back by agreement.   And the defense consisted in the claim that there was no liability until a survey and plat had been actually made; and also that Abell had used diligence to procure a survey, and that Munson had so acted as to extend the time of performance at various periods.

The statute of frauds requires every contract for the sale of lands to be in writing, and signed by the party making the sale.—*2 Comp. L.* § *3179.*   The rule prohibits any enforcement of parol contracts; and while written contracts, which would have been lawful if unwritten, may be modified by parol subsequently in many cases, yet this cannot be done where the law requires the agreement to be in writing.— *Goss v. Lord Nugent, 5 B. & Ad. 58; Stowell v. Robinson, 3 Bing. N. C. 928; Stead & Dawber, 10 A. & Ell. 57; Marshall v. Lynn, 6 M. & W. 109; Blood & Goodrich, 9 Wend. R. 68.*   And our statute goes further than the English statute, by making the contract void, instead of declaring that no action shall lie upon it.

We cannot look outside of the written contract to ascertain anything which is fixed by it.   And if the time of performance is absolutely fixed by agreement, there is no room left for the inquiries concerning reasonable time which the court allowed to be made, and for its rulings concerning which most of the errors are assigned.

The agreement that Munson should take possession on the first of September, necessarily implies that the plat shall have been made previously, for otherwise there could be no identification.   As the land had been already paid

for, any long delay would have been unreasonable, and we must regard this date as the one fixed by the parties themselves. And if the contract was actually delivered afterwards, inasmuch as the vendor chose to execute a document which contained such a provision, he was bound to convey at once. There was no condition to be performed on the other side, for the land was fully paid for, and under such circumstances he was the only party bound to perform. The whole inquiry concerning reasonable time was irrelevant, and the rulings were more favorable to Abell than he had any right to request.

The plaintiff below, Munson, testified to a demand made in the spring of 1868, and that the property was then worth about $150; and other witnesses testified to its value at that time. It is objected that this testimony was irrelevant. We do not think this objection valid. Assuming the first failure to have been on the first day of September, or when the contract was delivered, if after that time, we cannot regard such evidence of value at a time so little distant, as not admissible to show what was the value of the land previously. The law has no presumptions on the subject of changeable values in real estate, and such proof, though liable to be overcome by evidence of a previous change in the interval, is not too remote. These things must be looked at in a common-sense light, and as they would be·regarded by ordinary men interested in such transactions. While land does undoubtedly change values, yet it does not usually, unless in some peculiar localities, fluctuate so rapidly as to render evidence extending over a few months entirely useless as a criterion.

If the court had declared this evidence conclusive, and had shut out evidence of value at other periods, it might have become necessary to consider whether, after the time for performance has elapsed on a land contract, the New York rule, requiring a demand before action, should be recognized, or would apply where no tender is needed, as in a case

18 MICH.—V.

like the present, where the consideration had all been paid in advance. See *Connelly v. Pierce, 7 Wend. 129; Blood v. Goodrich, 9 Id. 68.* As the case stands, we do not feel called upon to consider the force or necessity of a demand, as fixing the date of liability for non-performance.

The case is a very clear one, and the only error that we can discover is that the plaintiff below conceded, and the court adopted, a series of admissions of legal privileges, to which defendant below was not entitled. These are not errors of which he can complain in this court.

The judgment must be affirmed, with costs.

The other Justices concurred.