# CHARLESTON.

## TIBBS v. ZIRKLE et als.

Submitted January 26, 1904.    Decided February 16, 1904.

1.  LAND—*Power to Sell—Option.*
       The written power to sell land does not include the power to option unless so expressed. (p. 53).

2.  LAND—*Option not Binding on Land Owners.*
       An option, not authorized by a written power to sell, is not binding on the land owners or a co-agent under such opwer to sell without express ratification. (p. 54).

3.  LAND—*Co-Agent—Purchase.*
       A co-agent under a power to sell, is not bound by an unauthorized option, not given or ratified by himself, and if he purchase the land for himself, he cannot be held as a trustee for the claimant under such option. (p. 54).

4.  LAND—*Option when Revocable.*
       An option given for a valuable money consideration cannot

be revoked until the time limit therein has expired. If such option is without consideration, it may be withdrawn or revoked at any time before acceptance. (p. 54).

5.   Land—*Option when Enforceable.*

     An option given without authority while not binding on the land owners who did not authorize or ratify it, is binding and enforceable against the optioner whose land is included therein. (p. 55).

6.   Land—*Purchaser for Value without Notice.*

     A person who has taken an option upon land, but has not paid the purchase money in full, is not a purchaser for value without notice. (p. 55).

Appeal from Circuit Court, Barbour County.

Bill by R. B. Tibbs against A. D. Zirkle and others. Decree for defendants, and plaintiff appeals.

*Reversed in Part.*

Ice & Ice and W. S. Meredith, for appellant.

W. T. George and E. D. Talbott, for appellees.

Dent, Judge:

This is a suit for specific performance instituted in the circuit court of Barbour county by R. B. Tibbs, plaintiff, against A. D. Zirkle *et al.*, in which the circuit court decreed specific performance against A. D. Zirkle individually, but refused it against N. G. Keim and the other defendants. The plaintiff appeals.

The suit is founded on the following optional contract:

"This agreement witnesseth: That A. D. Zirkle, attorney, in fact party of the first part, for and in consideration of the sum of one dollar, the receipt of which is hereby acknowledged, do hereby sell and convey to R. C. Dunnington & Co., party of the second part, heirs and assigns, the right to purchase all the coal except from one to three acres of each of the sixteen farms hereby represented in and under that certain tract of land in Valley District, Barbour County, W. Va., bounded by lands of N. T. Arnold, on East, North by P. Monahon and O'Brien tract, on West by Middle Fork River, on the South by Middle Fork River and N. T. Arnold and containing eighteen hundred

acres, more or less, together with the right to mine and remove
every part of the same without being required to provide for the
support of overlying strata or surface, and without being liable
for any injury to the same or to anything therein or thereon
by reason thereof and with all reasonable privileges for ventilat-
ing, pumping and draining the mines, together with the free
and uninterrupted right of way into and through said lands and
to build, keep and maintain roads and ways in and through said
mines forever, for the transportation of said coal, etc., and of
coal and other things necessary for mining purposes from and
to other lands.

"For which the parties of the second part, their heirs or
assigns, shall pay eighteen dollars per acre for each and every
acre of coal, no allowance being made for out crop as follows:
Eighteen hundred dollars within sixty days after this date, the
balance on or before the 3rd day of May, 1903, and it is agreed
that said second party shall pay expenses of survey, abstracting
of titles, etc., and further the party of the first part reserves
the right to bore through said coal for oil and gas and to mar-
ket same with being liable for damage.

"A good deed, clear of all encumbrances, with a general war-
ranty to be made to said second parties, heirs or assigns when
so notified by said second party.

"It is expressly understood and agreed that if the said coal is
not accepted and paid for by the party of the second part,
heirs or assigns, on or before the 3rd day of May, 1903, this
agreement may be considered rescinded and neither party shall
be bound thereby. And it is agreed that if the said 1800 dol-
lars is not paid on or before the 3rd day of March, 1903, this
contract is null and void, further, if said payment is made and
the balance $17.00 dollars per acre not paid on or before the 3rd
day of May, 1903, this contract is null and void and said pay-
ment is a forfeiture.

"In witness whereof, the said parties have hereto set their
hands and seals this 3d day of January, A. D. 1903.

"Signed, sealed and delivered in the presence of A. D. Zirkle,
Attorney in Fact.   (L. S.).

"Attest:  C. Morris."

This option was assigned to the plaintiff, who claims he fully
conformed to all the stipulations thereof. The option is

claimed to have been executed by virtue of the following power of attorney:

"Be it remembered that we the undersigned hereby appoint A. D. Zirkle to sell our coal, except enough for domestic use, and hereby give him power of attorney to make said sale, not to sell for less than $15.00 per acre and give him full control of said sale, and we agree to abide by the said sale that he may make; and we further agree to let him manage the sale and have the power to make said sale as long as he thinks there is a chance to sell, and we further agree to pay the said A. D. Zirkle reasonable compensation for his time and his expense for making sale as aforesaid if he make said sale, but if he fail to make the said sale no compensation is to be paid the said A. D. Zirkle for his time and expenses except agreed upon by the majority of the undersigned, and we further agree to give him all the time necessary to make tests or opening and also not to interfere with any sale that may be pending if he thinks there is a chance to sell.

"Witness our hand this 14th day of September, 1900. Jacob Zirkle, 400 A. Patrick McGinnis, 156 A. Bridget Caughlin, 102 A. H. W. Goss, 110 A. D. T. Goss, 45 A. Lewis Zirkle, 200 A. N. Rohrbaugh, 70 A. B. F. Wiseman, 180 A. G. C. Wiseman, 20 A. Valeria Wilson, 50 A. A. B. Wilson, 150 A. M. E. Gower, 60 A. A. D. Zirkle, 100 A. J. D. Zirkle, 110 A."

The defendant Keim between the 22d of January, 1903, and the 10th of February, 1903, took options on the coal of A. D. Zirkle, Lewis Zirkle, Nathan Rohrbaugh, Henry W. Goss, A. B. Wilson, B. F. Wiseman, Anna Goss, Jacob Zirkle, Margaret E. Gowen, J. D. Zirkle, G. C. Wiseman and Valeria Wilson, and paid a down payment on the purchase money to each, which was forfeitable. None of Keim's optioners had actual notice of the plaintiff's option prior to the date of Keim's options. While Zirkle, whose deposition alone is taken in behalf of defendant Keim, testifies that Keim did not have notice of such option, he admits that there was a contract between himself and Keim at the time the option was taken by which Keim was interested in such option, and if the same matured into a sale he, Keim, was entitled to share equally with Zirkle in the profits of the sale, and about the time and just previous to the taking of the options by Keim, with Zirkle's assistance, Zirkle endeavored to get the op-

tionors to abandon their options, thus plainly showing that Zirkle was working in Keim's interest and no doubt with the full knowledge and approval of Keim.

So the important questions in this case are narrowed down to two : First. Did Zirkle's power of attorney authorize him to execute the plaintiff's options? Second. Did Keim occupy such a relation toward the plaintiff as prevented him from taking advantage of Zirkle's lack of authority to execute such option ?

If it had been shown that Keim had done anything to ratify or approve of the Zirkle option, or that Zirkle was interested in Keim's options a different case would have been presented. But there is no evidence other than suspicious circumstances directly opposed by Zirkle's evidence tending to prove Zirkle's interest in Keim's options, while the fact that Keim took these options shows that he did not approve or ratify Zirkle's option. If Zirkle had authority under his power of attorney to execute the option, Keim under his contract with Zirkle by which he was to have an equal interest in such power of attorney, would have been equally bound with Zirkle by such option as they would have been mutually interested therein. But if Zirkle exceeded his authority in the execution of such option then Keim would be no more bound thereby than the land owners, and this could only be by ratification thereof. The land owners stand indifferent in this suit, and their failure to answer the bill and deny its allegations might be deemed a willingness on their part to ratify the plaintiff's option, but this they could not do without Keim's consent after the execution of his options. We cannot hold otherwise than that Zirkle exceeded his authority under his power of attorney in executing plaintiff's option, for he was only authorized to make sale, while an option is not a sale, although it may eventuate in a sale. For the time being it prevents a sale, it matters not what the event thereof may be, and if Zirkle had authority to give an option for three months, he had the right to extend such option for three years, and in this manner he might indefinitely tie up the property and prevent instead of securing a sale thereof. This certainly was not had in view by the land owners when they authorized Zirkle to make sale for them. Those dealing with Zirkle must take notice of the extent

of his power.   1 Am. & En. En. Law (2d Ed.) 1010; *Field* v. *Small*, 17 Col. 386; *Dyer* v. *Duffy*, 39 W. Va. 148.

Zirkle's option being without authority, neither Keim nor the land owners were bound by it and without waiting to see whether it would result in a sale, they had the right to repudiate it and enter into any other arrangement either between themselves or others for the option or sale of their coal.   Keim held no confidential relation whatever towards the plaintiff in so far as the unauthorized option was concerned.   It would have been otherwise had Zirkle made a sale instead of giving an option, as Keim would have been bound thereby by reason of his contract with Zirkle.   Keim was in no sense the agent of the plaintiff and was under no obligation of duty towards him.   Keim was not bound to ratify Zirkle's option nor await its consummation. The option gave plaintiff no vested interest in the land, but was a mere right to purchase within a limited time, binding only upon Zirkle.   Keim was not in duty bound to make it good. 1 Perry on Trust, s. 206, p. 301; *Farley* v. *Kitson*, 27 Minn. 102, at p. 105.

The plaintiff not being entitled to be substituted to Zirkle's rights under his power of attorney since his "option" was in violation thereof, he is not entitled to be substituted to any of the rights that Zirkle might have by virtue of his contract with Keim.   The option is not binding on Keim and could not be made so by substitution so as to make Keim plaintiff's agent or trustee in taking his options.   The power of attorney was binding on Keim and he had no right to take options for his own benefit without Zirkle's assent, but as plaintiff is not entitled to enforce such power of attorney against the land owners he cannot enforce it against Keim.

Keim's agency grew out of and is controlled by the power of attorney.   Plaintiff's rights grow out of and are controlled by his option, and he acquired no vested rights under the power of attorney that can be affected by Keim's purchasing in disregard thereof.   Zirkle was under obligation to and no doubt could have prevented the revocation of his power of attorney for the time limited in his option, but he had no legal right to compel such extension and his acquiesence in the revocation thereof imposes no binding legal duty on either Keim or the land owners to the plaintiff.   Zirkle's breach of duty to the plaintiff, though

fraudulent, imposes no legal duty on those who are not participants in such fraud. Plaintiff's rights are wholly limited to his option which imposes neither express nor implied legal obligation upon Keim. Hence Keim has committed no breach of legal duty he owes to the plaintiff except in taking an option on A. D. Zirkle's one hundred acres of coal. The circuit court so decreed, but instead of cancelling Keim's option as a cloud on plaintiff's title or reserving the right to do so, it finally and completely dismissed the bill as to Keim, thus refusing complete relief between the parties. *Hotchkiss* v. *Fitzgerald Plaster Co.,* 41 W. Va. 357, (23 S. E. R. 576). While the land owners and Keim were not bound by the option, Zirkle is, for he received a money consideration therefor, and he could not revoke it during the time limited. The law is otherwise if he had received no consideration. 21 Am. & En. En. Law, (2d Ed.) 929; *Weaver* v. *Burr,* 31 W. Va. 736; *Eclipse Oil Co.* v. *South Penn Oil Co.,* 47 W. Va. 84.

The plaintiff complied with the terms of the option and tendered Zirkle the sum of $1,800.00, the full cash value of his one hundred acres of coal. As to him the court did not err in decreeing specific performance. The court did, however, err in dismissing the bill as to defendant Keim, as he held a recorded option on A. D. Zirkle's coal, and as he has not paid the purchase money, he could in no event be treated as an innocent holder for value without notice. *Webb* v. *Bailey,* 41 W. Va. 463. His option should therefore be cancelled as a cloud on plaintiff's title if the plaintiff elects to take the Zirkle coal.

The decree will therefore be reversed in so far as it dismisses the bill as to defendant Keim and in all other respects affirmd, and the cause is remanded to the circuit court for further proceedings according to the rules and principles governing courts of equity. The reversal is at the costs of the defendants A. D. Zirkle and N. G. Keim.

*Reversed in Part.*