ADAMS et al. v. HUGHES.

(Court of Civil Appeals of Texas. Galveston. Oct. 24, 1911. Rehearing Denied Nov. 16, 1911.)

1. FRAUDS, STATUTE OF (§ 72*) — SALE OF STANDING TIMBER — "CONTRACT FOR THE SALE OF REAL ESTATE"—"REAL PROPERTY."

A contract of sale of timber allowing the purchaser 15 years to remove it is a "contract for the sale of real estate" within the statute of frauds (Rev. St. 1895, art. 2543, subd. 4), and must be in writing.

[Ed. Note.—For other cases, see Frauds, Statute of, Cent. Dig. § 117; Dec. Dig. § 72.*

For other definitions, see Words and Phrases, vol. 2, p. 1530; vol. 7, pp. 5939–5951; vol. 8, pp. 7778, 7779.]

2. LOGS AND LOGGING (§ 3*)—SALE OF STANDING TIMBER—CONTRACTS—INVALIDITY.

A contract of sale of timber on "certain lands" of the vendor in the southern part of a designated county is void for want of a sufficient description of the lands.

[Ed. Note.—For other cases, see Logs and Logging, Cent. Dig. § 6; Dec. Dig. § 3.*]

3. LOGS AND LOGGING (§ 3*)—SALE OF STANDING TIMBER—CONTRACT—DESCRIPTION—SUFFICIENCY.

A written contract for the sale of the timber on "our lands in the southern part of" a specified county is not necessarily void for uncertainty of description, if it covers all the land of the vendors in the locality named; but, where it is shown by parol that they owned other land in that locality, which concededly was not covered by the contract, the contract is void for uncertainty.

[Ed. Note.—For other cases, see Logs and Logging, Cent. Dig. § 6; Dec. Dig. § 3.*]

4. LOGS AND LOGGING (§ 3*)—SALE OF STANDING TIMBER — CONTRACT — ACTION FOR BREACH—VARIANCE.

Plaintiff, in an action for breach of a contract for the sale of standing timber, pleaded the sale by written contract of the timber on all the defendants' lands in the southern part of a specified county, and specifically described certain tracts, alleging that defendants owned such tracts, and no others in that location, and that the tracts specified were the only ones the timber on which was sold. The contract, pleaded verbatim in the petition and annexed to it as an exhibit, agreed to sell all the timber "on our lands situated in the southern part of" the county specified. The proof showed that the sellers owned other timber lands than those specified in the southern part of the county. Held, that if, to avoid the invalidity of the contract for uncertainty of description, it were to be held that the contract covered the additional tracts shown by the proof to be owned by the defendants, there would be a fatal variance between the proof and the allegations of the petition that the tracts particularly specified in the petition were the only ones on which the timber was sold.

[Ed. Note.—For other cases, see Logs and Logging, Cent. Dig. § 12; Dec. Dig. § 3.*]

5. FRAUDS, STATUTE OF (§ 131*)—CONTRACTS AFFECTING REAL ESTATE—PAROL MODIFICATIONS—VALIDITY.

A written contract of sale of timber, which provides for the consummation of the sale on a designated date by the purchaser depositing in a designated bank the balance of the price and by the vendor giving a merchantable title, can not be modified by a parol agreement providing that the vendor need not make a merchantable title, but shall attempt to cure defects, and that, if they cannot be cured, the purchaser will accept a warranty deed, and absolving the purchaser from his obligation to pay the unpaid price into the bank on the designated date, because the parol agreement changes the terms of the written contract.

[Ed. Note.—For other cases, see Frauds, Statute of, Cent. Dig. §§ 283, 284; Dec. Dig. § 131.*]

6. LOGS AND LOGGING (§ 3*)—SALE OF STANDING TIMBER—BREACH OF CONTRACT—DAMAGES.

Where a contract of sale of standing timber failed because of the inability of the vendor to make title, and the breach was not willful or fraudulent, the purchaser could only recover the purchase money paid, and not the difference between the contract price of the timber and its market value.

[Ed. Note.—For other cases, see Logs and Logging, Cent. Dig. § 12; Dec. Dig. § 3.*]

7. LOGS AND LOGGING (§ 3*)—SALE OF STANDING TIMBER—CONTRACTS—MUTUAL AND DEPENDENT PROMISES.

A contract of sale of timber, which binds the purchaser to pay into a bank on a designated date the balance of the unpaid price, and which requires the vendor to deposit in the bank a merchantable title, makes the obligations of the parties mutual and dependent promises, and, where the purchaser fails to pay the money into the bank on the day designated, the vendor may treat the contract as terminated.

[Ed. Note.—For other cases, see Logs and Logging, Cent. Dig. § 6; Dec. Dig. § 3.*]

8. APPEAL AND ERROR (§ 1116*)—DISPOSITION OF CASE ON APPEAL.

Where defendants, in an action for damages for breach of contract to sell timber on lands, appealed from an erroneous judgment for plaintiff without complaining of the judgment against them on their plea in reconvention for the earnest money, the court reversing the erroneous judgment will not disturb the judgment on the plea in reconvention.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4411, 4412; Dec. Dig. § 1116.*]

Appeal from District Court, Jefferson County.

Action by B. F. Hughes against W. J. B. Adams and others. From a judgment for plaintiff, defendants appeal. Reversed and rendered.

———

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key No. Series & Rep'r Indexes

McDowell & Davidson, W. W. Blake, M. S. Duffie, J. T. Adams, and Oliver J. Todd, for appellants. Robt. A. John, F. J. Duff, A. L. Davis, and W. F. Tarver, for appellee.

REESE, J. This is the second appeal in this case. Hughes v. Adams, 55 Tex. Civ. App. 197, 119 S. W. 135. On the first trial the court sustained several exceptions, which were in legal effect a general demurrer, to the petition. The main contention urged was that the contract sued on was void on its face, on the ground that it did not sufficiently describe the land, and that such description as was given in the contract could not be helped by the averments of the petition. This contention was not sustained by this court, and on this ground mainly the judgment was reversed. The action is for the recovery of damages for breach by Adams and others of a written contract, in the nature of an option, for the sale and conveyance by the defendants Adams to the plaintiff of all of the timber on certain lands in the southern part of Jasper county. The contract is not signed by Hughes, and will be hereinafter fully set out. Plaintiff claimed a breach of contract by Adams, and sued to recover the difference between the market value at the time of the breach and the contract price, alleged to be $21,561.50. Upon trial, with the assistance of a jury, there was a verdict for plaintiff for $1,265, upon which judgment was rendered. Their motion for a new trial having been overruled, defendants appeal.

The allegations of the petition are as follows:

"That hereto, to wit, on the 21st of December, 1906, the said defendants, W. J. B. Adams, R. F. Adams, and Abel Adams, entered into a written contract with the plaintiff herein, which recited that, in consideration of $1 to them in hand paid by the said B. F. Hughes, the plaintiff herein, the said defendants agreed to sell and deliver to the said B. F. Hughes all the pine timber on their lands situated in the southern part of Jasper county, Tex., at a cash price of $10 per acre to be paid by said Hughes, and that the said purchaser, plaintiff herein, was to have 15 years from the date of sale of said timber to cut and remove same. The plaintiff herein agreeing to place in escrow, that is to say, upon deposit in the First National Bank of Beaumont, Tex., 10 per cent. of the purchase price of said timber, as earnest money, to be held by said bank as trustee, upon condition that the said defendants should, by February 1, 1907, deliver to said bank for plaintiff, and in plaintiff's name, a merchantable title to said timber, and thereupon the said Hughes, the plaintiff herein, was to pay into said bank the balance of the purchase price of said land, which said contract so entered into in writing as aforesaid is now in possession in escrow of the First National Bank of Beaumont, Tex., and a copy of the same is hereto attached and marked 'Exhibit A.' and prayed to be taken as a part hereof. That by the execution of said contract the said defendants contracted and agreed, promised and bound themselves to sell and deliver to plaintiff a good merchantable title to the timber described and referred to therein, and plaintiff bound himself to take said land and to pay therefor the consideration named in said contract, and the plaintiff thereupon became liable to and bound by all of the terms of said contract.

"Plaintiff alleges: That in pursuance of the terms of said contract, and anterior to January 5, 1907, the said plaintiff deposited in the First National Bank at Beaumont, Tex., the 10 per cent. of the purchase price agreed to be paid by him to the defendants, W. J. B. Adams, R. F. Adams, and Abel Adams, for all of the said pine timber on all of their lands located in the southern part of Jasper county, there being 2,257 acres of land owned by them in the southern part of the said county, hereinafter more specifically described, the aggregate purchase price that the plaintiff had obligated himself to finally pay for said land being the sum of $22,570. That as aforesaid, and in compliance with and in pursuance of his obligations to make this deposit of 10 per cent. of the purchase price, he did, on and before the date hereinabove last alleged, actually deposit in the First National Bank of Beaumont, Tex., the sum of $3,000 in cash, and that the said sum of money has from January 10, 1907, been continuously on deposit in said bank, by virtue of and in pursuance of the terms of the plaintiff's contract, and is held by said bank now in trust as earnest money, binding this plaintiff on his part in compliance with the contract so made by him as aforesaid.

"The plaintiff further alleges: That in his contract with the said W. J. B. Adams, R. F. Adams, and Abel Adams, the said defendants agreed to convey to the plaintiff all of the timber on their lands situated in the southern part of Jasper county, Tex. That said defendants on said day were seised of and possessed and owned the fee-simple title to the following described tracts of land, to wit: (a) A certain tract of land lying and being situated in Jasper county, Tex., originally patented to Jas. A. Wynn, being abstract No. 513, certificate Nos. 2567, 2577, containing 177 acres; (b) a certain tract of land lying and being situated in Jasper county, Tex., originally patented to F. Tremme, containing 160 acres, being abstract No. 701; (c) a certain tract of land lying and being situated in Jasper county, Tex., originally patented to S. Hittselman, containing 640 acres, being abstract No. 300, certificate No. 339; (d) a certain tract of land lying and being situated in Jasper

county, Tex., containing 640 acres, originally patented to T. Pratt, being abstract No. 411, certificate No. 417; (e) a certain tract of land lying and being situated in Jasper county, Tex., containing 640 acres, originally patented to Grant and Lator, abstract No. 166, certificate No. 428. That the said above tracts of land constitute all of the lands owned by the defendants, W. J. B. Adams, R. F. Adams, and Abel Adams, in the southern part of Jasper county, Tex., upon which the timber remained unsold at the date of said contract. That the above tracts of land were the tracts discussed by the defendants, W. J. B. Adams, R. F. Adams, and Abel Adams, and the plaintiff during all the negotiations preceding the making of said contracts. That said tracts of land are situated in the extreme southern portion of Jasper county, Tex., Jasper county being oblong in shape, being about 65 or 70 miles in length and only about 20 miles in width, and each of the tracts of land above described being situated in the extreme southern end of said county, and being the only lands in that part of the county upon which the defendants, W. J. B. Adams, R. F. Adams, and Abel Adams, owned timber at the date of said contract, and that subsequent to the making of said contract with W. J. B. Adams, R. F. Adams, and Abel Adams, they, at plaintiff's request, procured and sent to plaintiff, to be submitted to the plaintiff's attorney, abstracts of each of the above-mentioned surveys. That the said W. J. B. Adams, R. F. Adams, and Abel Adams owned no other land or timber in the southern part of Jasper county than those tracts above described, and owned no land within 25 or 30 miles of said tracts. That the Grant and Lator survey is so situated that its southern boundary is identical with the south boundary line of Jasper county, and that the most northerly of said surveys is not over three or four miles north of the southern boundary line of Jasper county. That, after furnishing the plaintiff the abstracts of the above-described land, the defendants, W. J. B. Adams, R. F. Adams, and Abel Adams, met the plaintiff in the city of Beaumont on the 1st day of February, 1907, and discussed with plaintiff and his attorney the title to the above-mentioned surveys, and it was then understood, as it has been understood at all times since then, that the timber of said surveys was the timber embraced in said contract. That the contract entered into by and between the said W. J. B. Adams, R. F. Adams, and Abel Adams was in words and figures substantially as follows: 'For and in consideration of $1.00 to me in hand paid by B. F. Hughes of Houston, Texas, the receipt of which is hereby acknowledged, we hereby agree to sell and deliver to the said B. F. Hughes, all of the timber on our lands situated in the southern part of Jasper county, Texas, at the cash price of $10.00 per acre, and to give 15 years from that date in which to cut and remove said timber. On or before January 5, 1907, the said Hughes agrees to place in escrow in the First Nat'l Bank of Beaumont, along with this contract, 10 per cent. of the purchase price of said timber as earnest money, to be held by said bank as trustee on the following conditions: By February 1, 1907, we are to deliver into said bank a merchantable title to said timber to said Hughes and said Hughes is to pay into said bank the balance of the above mentioned price. His failure to do so shall forfeit to us the 10 per cent. earnest money payment. [Signed] W. J. B. Adams. R. F. Adams. Abel Adams. $3,000.00.' And that by the signing, execution, and delivery thereof, the said defendants, W. J. B. Adams, R. F. Adams, and Abel Adams, became and were bound to sell and deliver to the plaintiff all said timber on the lands above described, at the cash price of $10 per acre, and that the plaintiff thereby acquired the right to cut and remove said timber from said lands within a period of 15 years from date of sale, and upon the deposit by plaintiff in escrow in the First National Bank of Beaumont of 10 per cent. of the purchase price, the defendants, W. J. B. Adams, R. F. Adams, and Abel Adams, and each of them, became liable and bound to deliver into the First National Bank by February 1, 1907, a merchantable title to the plaintiff to said timber, and the plaintiff became liable and was bound, upon the tender or delivery of such merchantable title, to pay the balance of the purchase price of said timber.

"Plaintiff further alleges: That on February 1, 1907, he was ready, able, and willing to comply with the terms of said contract and to pay the purchase money for said timber, and that on said date the plaintiff had in fact, which fact was well known to the defendants, contracted to sell said timber to the Nona Mills Company, a corporation which was solvent and amply able to pay for said timber, at a price greatly in excess of the price which he had contracted to pay said defendants for the purpose of carrying out his contract with the defendants as well as his contract with the Nona Mills Company. That the plaintiff arranged with the defendants to meet him in Beaumont for the purpose of receiving the opinion of the attorney who was examining the abstracts of title to said tracts of land for the Nona Mills Company and this plaintiff. That said attorney on February 1, 1907, made certain objections to the defendants' title to said land and the timber thereon. By reason of which objections the defendants were unable to show a merchantable title to said timber in themselves, and for that reason this plaintiff was unable to close his contract with the Nona Mills Company, whereupon, at the special instance and re-

quest of the defendants, it was mutually agreed and understood by and between this plaintiff and the defendants that the time named in said contract for its consummation and completion should be extended, and that the defendants would undertake to remove the supposed defects pointed out by the attorney for the Nona Mills Company and this plaintiff to defendants' title to said land, and said defendants agreed and promised to undertake and do all in their power to cure said defects and perfect their title within a reasonable time after the 1st day of February, 1907.

"Plaintiff further alleges that while said defects did exist and by reason of same he could not insist upon the Nona Mills Company carrying out its contract with him unless the defendants cured the title as above stated, and as they promised to do, yet this plaintiff was satisfied with the defendants' title and at the time so informed them that should they be unable to cure and meet the objections pointed out by the attorney who had examined said abstract, that this plaintiff would take the title of the defendants as it stood and would insist upon their carrying out their contract with him. It being understood by both the plaintiff and the defendants that the object and purpose in curing the defects in defendants' title as pointed out by said attorney was to enable this plaintiff to carry out his contract with the Nona Mills Company, and should the defendants, after having made an honest effort, as they promised to do, fail to cure said defects, then that this plaintiff would take the title of the defendants as it then existed, and this plaintiff advised the defendants and it was so understood by and between the parties. That the defendants did not succeed in curing the defects in said title, or any of them, and the plaintiff is informed, and believes, that the defendants, nor either of them, made no efforts to cure said defects, which could have been done. That the defects in defendants' title were as follows: (The petition here sets out fully the defects in the title to the Grant and Lator, the Wynn, the Hittselman and Pratt surveys, as to which it is only necessary to say here that they were such as to render such titles not merchantable titles.) That shortly after February 1, 1907, and while the plaintiff was engaged in an effort to assist the defendants in curing their titles, and while the plaintiff was still ready and willing to comply with his contract, and was awaiting notice from the defendants that either they had cured the defects in their titles and were ready and able to furnish plaintiff with a merchantable title to said timber, or that they were unable to do so, in either of which events plaintiff was still ready and willing to accept their deeds to said timber and pay the prices agreed upon, the defendants, W. J. B. Adams, R. F. Adams, and Abel Adams, disregarding their contracts with the plaintiff, and willfully intending to breach the same, sold all of said timber to some other person or persons, and thus voluntarily placed themselves in such a position as that they were unable to comply with their contract with the plaintiff, repudiated their contracts with the plaintiff, and wholly failed and refused to comply therewith. That the aggregate amount which the plaintiff agreed to pay under the said contract with W. J. B. Adams, R. F. Adams, and Abel Adams for the timber embraced in their contract with the plaintiff was $22,570, and that the market value of said timber in Beaumont, Jefferson county, Tex., and in Jasper county, Tex., on the 1st day of February, 1907, and thereafter up to the date when the said W. J. B. Adams, R. F. Adams, and Abel Adams sold said timber, was the sum of $44,311.50, and that the difference between said contract price and the market value was the sum of $21,741.50, in which sum plaintiff has been damaged by reason of the breach of said contract, and for which sum the said W. J. B. Adams, R. F. Adams, and Abel Adams. and each of them, have become liable to the plaintiff, and that by reason of the premises the said defendants, and each of them, have become liable to pay to the plaintiff the said sum of $21,741.50."

Attached to the petition as an exhibit is also a copy of the contract.

The case was tried upon the third amended petition.

Appellants interposed a general demurrer and various special exceptions, which are not necessary to be set out here, and which were all overruled. They pleaded the general issue and specially that: "Plaintiff offered to buy all the growing timber on said portion of their lands in the southern part of Jasper county, and that defendants told them that they had no good record title to the property and could not secure same, but that they were willing to give a general warranty deed, and would not trade upon any other basis, and that, when plaintiff prepared the contract containing the words 'marketable title,' they objected to same because they did not know the meaning of the term, and the plaintiff explained to them that said term was fully complied with by their general warranty deed, and it was mutually agreed by the parties that their general warranty deed should constitute a marketable title; and therefore plaintiff was estopped by his said representations to deny that same constituted a marketable title, and, if it meant otherwise than as agreed by the parties, then the plaintiff was guilty of fraud, and defendants being wholly ignorant as to the technical meaning of said term or misrepresentation, and relying solely upon said plaintiff's representation, were misled to sign said contract, and that they would not have signed it but for said representation and understanding and agreement. They further alleged that they had offered to

execute their warranty deed and deposit it in the First National Bank of Beaumont, Tex., long before February 1, 1907, being the last day agreed, and that plaintiff protested against same, and stated that he, said plaintiff, would have said deed prepared for their signatures which he never did, and thereby plaintiff waived the deposit of said deed in the First National Bank. It was further alleged that defendants were at all times ready and willing to execute and deliver to the plaintiff their general warranty deed, but that the plaintiff, while he pretended to be the purchaser of said property and pretended to purchase same on his own account, was wholly insolvent and unable to purchase same; and that on the defendants coming to Beaumont they ascertained that the Nona Mills Company was to be the purchaser of the properties, if they were purchased at all; and that, the defendants having refused to secure abstracts for the property—for the reason that they had not agreed to deliver a record title—the plaintiff procured same on his own account, and submitted same to Judge F. D. Minor of Beaumont, who turned them down as record titles, and that by reason of the action of said attorney, acting for the Nona Mills Company, said company refused to accept same, and did not accept same, and said titles were not accepted by the Nona Mills Company, or by said Hughes, within the time required by said option; and that said Hughes requested the defendants, when they executed the deed, to execute it to the Nona Mills Company rather than to himself; and that the defendants at no time agreed to extend the time of said option, either orally or in writing, but that they did wait a reasonable time to give the Nona Mills Company an opportunity to take their said titles in their then condition if they so desired, and would have sold said land to said Nona Mills Company if said company would have accepted same, notwithstanding the fact they were not legally bound to do so; and that said defendants, having another opportunity to sell said land before taking up said second trade, wired to the Nona Mills Company, or its officers, that another trade was pressing and that they should take the land if they desired it; and that said Nona Mills Company refused to do so, whereas the timber was sold, about 13 days after the plaintiff's option had expired, to W. H. Bonner, for exactly the same price as stipulated in plaintiff's option, which sum was the market value of said property."

Adopting appellee's contention as to the facts, wherever there is a conflict in the evidence, we find the following conclusions of fact: On December 21, 1906, appellants, being then the owners of the five tracts of timbered land described in the petition lying in the southern part of Jasper county, executed to appellee the written contract set out in the petition. It is alleged in the petition that these are the tracts of land discussed by the parties and embraced in the contract. These tracts of land lie in the extreme southern part of Jasper county, some of them on the south line of the county. Jasper county is in shape about 70 miles long from south to north and about 25 miles wide from east to west. Appellants at the time owned two or three other tracts of timbered land also lying in the southern part of Jasper county, and in the immediate vicinity of the land described in the petition, but which, according to the allegations of the petition, were not embraced in the sale. After the execution of the contract, the earnest money called for was deposited with the First National Bank of Beaumont, to the amount of $3,000. It seems that this money was furnished by the Nona Mills Company for which, in fact, the timber was being bought, and which had contracted with appellee to take the timber if the titles were satisfactory, and to whom the deed was to be made; that is, the timber was to be purchased by Hughes and sold by him to the Nona Mills Company at a satisfactory advance in the price. According to the terms of the contract, appellants were to furnish a merchantable title. They pleaded that it had been explained to them that this meant only their warranty deed, that they knew they did not have a record title to the land and would not have executed the contract binding them to give a merchantable title, but for appellee's definition of that term, of the meaning of which they were ignorant. This was denied by appellee. The issue was specially presented to the jury by the charge, and was decided adversely to appellants' contention. Appellee went ahead and got up abstracts of the title, which were placed in the hands of F. D. Minor, attorney for the Nona Mills Company. On February 1, 1907, the parties met at Beaumont, and appellants tendered their general warranty deed for the timber. On the part of the Nona Mills Company their attorney refused to accept this title, pointing out certain defects in the title, which we find existed and which rendered it not a merchantable title. According to the testimony of appellee, which was denied by appellants, but which in deference to the verdict we find to be true, it was then verbally agreed that appellants should endeavor to cure the defects in the titles, and, if they could not do so within a reasonable time, appellee would accept their warranty deed, with which he himself was satisfied, but which was not satisfactory to the Nona Mills Company, which was expected to furnish the money to complete the purchase. Appellee never at any time paid in to the bank the balance of the purchase money according to the written contract, and in fact was unable to do so out of his own means, but depended upon Nona Mills Company to do so. About the 9th day of February, 1907, appellants sent a telegram to the Nona Mills Company inquiring whether it had concluded to take the timber, and advising it that another trade was pressing..

In reply to this they were advised that the Nona Mills Company would not take the timber until advised by its attorney that title was satisfactory. Thereafter, on February 13th, appellants sold the timber to Bonner at the same price at which it had been contracted to appellee, giving their general warranty deed.

After the Nona Mills Company refused to accept the title tendered, George W. Carroll, who was financially able to do so, agreed to take it and to put up the purchase money, in the event the defects in the title could not be cured to the satisfaction of the Nona Mills Company; but appellants knew nothing of this. The evidence was conflicting as to the market value of the timber; but we find that the difference between the market value and the contract price was at least as much as the amount awarded by the verdict. We find as a fact from the undisputed evidence that appellants did not act either willfully or fraudulently in selling the timber to Bonner.

Appellants in their brief have presented their grounds for reversal of the judgment, embraced in numerous assignments of error, many of them addressed to the ruling of the court in overruling their general demurrer and special exceptions to the petition. To discuss each of the propositions advanced under the various assignments of error would not only stretch this opinion to an intolerable length, but is, we think, in view of our conclusions on the whole case, unnecessary.

Three questions arise and are properly presented by the assignments of error, each one of which we think is decisive of this appeal and of the case.

[1] We think there can be no doubt about the contract in question, for the sale of the timber, allowing 15 years to remove the same, was a "contract for the sale of real estate" within the meaning of subdivision 4, art. 2543, R. S., and required to be in writing. This question was left undecided in our opinion upon the former appeal (55 Tex. Civ. App. 197, 119 S. W. 135), but has since been decided by this court in Burkitt v. Wynne, 132 S. W. 816. This appears to us to be the practically unanimous holding of the authorities. Kingsley v. Holbrook, 45 N. H. 313, 86 Am. Dec. 173; McKenzie v. Shows (Miss.) 12 South. 336, 35 Am. St. Rep. 654; Hirth v. Graham, 50 Ohio St. 57, 33 N. E. 90, 19 L. R. A. 721, 40 Am. St. Rep. 641; Drake v. Howell, 133 N. C. 162, 45 S. E. 539. Inasmuch as we regard the point as conceded by appellee in his brief, we forbear to multiply authorities in support of our holding.

[2] We held in our opinion on the former appeal that the trial court erred in sustaining the exception to the petition on the ground that the contract sued on was void for want of description of the land upon which the timber was located. We held that the contract was not void on this ground, but that the description was sufficiently certain and definite to identify the land, if, as averred in the petition, Jasper county was 75 miles long from north to south and only 25 miles wide from east to west, that the lands referred to lay in the extreme southern part of the county either on or in the immediate vicinity of the south line, and that appellants owned no other timbered lands in that neighborhood, nor within 25 or 30 miles thereof. Upon the present trial, appellee did not undertake to meet the averments of his petition as to these being the only timbered lands which appellants owned in this vicinity or in the southern part of the county. On the contrary, it is established that they, at the time, owned two or three tracts of timbered land in the immediate vicinity of these lands, and certainly in the southern part of the county. It is not alleged that the contract was intended to embrace these lands. On the contrary, it is the effect of the averments of the petition that it did not. These lands come as fully within the description in the contract as those alleged in the petition to have been intended to be included. In fact, it is shown that the sale did not embrace all of the lands owned by appellants in the southern part of Jasper county, and, instead of rendering the description certain, the evidence had the contrary result. If the description in the contract had been of "certain lands belonging to us in the southern part of Jasper county," leaving the identification of lands to be determined by the parol agreement of the parties, as to what lands were intended to be embraced in the contract, we think there can be no doubt that the contract would be declared void for want of description.

[3] It was only by reason of that fact, as stated in the contract, that the lands embraced were, as the contract was construed by us, "all of the timber on all our lands, etc.," that the contract was saved from the objection made by appellants. See opinion on former appeal. The evidence to render this description certain was not forthcoming. On the contrary, the averments to this effect in the petition were shown to be not true, and consequently the contract must fail for want of certainty in the description. Cook v. Oliver, 83 Tex. 562, 19 S. W. 161; Bullock v. Smith, 72 Tex. 548, 10 S. W. 687; Penn v. Yellow Pine Lumber Co., 35 Tex. Civ. App. 181, 79 S. W. 842.

[4] If it should be held that the parol proof offered was sufficient to include the lands embraced in the petition and alleged to be those sold, as well as the other tracts shown to have been included in the description, and that in this way the lands embraced in the contract, as shown by the evidence, were in fact so embraced along with the other tracts embraced in the contract but not in the petition, then there is a fatal variance between the proof and averments of the petition that these were the only lands the timber on which was sold. The question, as we view it, goes

to the root of the appellee's case and leaves him without any valid contract upon which to rest his claim for damages.

[5] Appellee relies not alone on the written contract, but upon the parol modification of it entered into on February 1, 1907, when the parties met at Beaumont, as set out in the petition. It is urged that this subsequent parol contract whereby appellants undertook within a reasonable time to cure the defects in the title, and appellee agreed, if they could not do so, to accept their warranty deed, must be considered as part of the contract whereby his rights are to be determined. It is urged by appellants, on the other hand, that this parol agreement was void under the statute of frauds, and this contention, we think, must be sustained. The weight of authority seems to us to sustain the proposition that a parol extension of the time of performance of a contract required by the statute of frauds to be in writing is void. Ladd v. King, 1 R. I. 224, 51 Am. Dec. 627; Hicks v. Aylsworth, 13 R. I. 562; Davis v. Parish, Litt. Sel. Cas. (Ky.) 153, 12 Am. Dec. 287; Atlee v. Bartholomew, 69 Wis. 43, 33 N. W. 110, 5 Am. St. Rep. 103; Jarman v. Westbrook, 134 Ga. 19, 67 S. E. 403; Blood v. Goodrich, 9 Wend. (N. Y.) 68, 24 Am. Dec. 121; Emerson v. Slater, 22 How. 28, 16 L. Ed. 360; Swain v. Seamans, 9 Wall. 254, 19 L. Ed. 554. And see, also, Abell v. Munson, 18 Mich. 306, 100 Am. Dec. 165, and decisions collected in note.

Appellee, upon this proposition, has cited the case of Bullis v. Presidio Mining Co., 75 Tex. 540, 12 S. W. 397, as holding to the contrary. The doctrine announced by Judge Henry in that case was that the time for the performance of a contract required by the statute of frauds to be in writing can be extended by parol, citing Cummings v. Arnold, 3 Metc. (Mass.) 486, 37 Am. Dec. 155; Stearns v. Hall, 9 Cush. (Mass.) 31; Stone v. Sprague, 20 Barb. (N. Y.) 509; Baker v. Whiteside, Breese (Ill.) 174, 12 Am. Dec. 168—all of which sustain this proposition. It was held, however, that the parol contract relied upon, alleged to have been made by Bullis, was not merely an agreement to extend the time of performance of the original written contract, but contained new and independent provisions, and was therefore void under the statute of frauds. So the statement in the opinion as to the effect of a parol extension of the time of performance of a contract required to be in writing was not necessary to a decision of the case, and may be said to be dictum. We are not disposed to so regard it, however, and would hold ourselves concluded by the statement of law referred to, notwithstanding the weight of authority elsewhere. But we take the same view of the parol agreement here as the Supreme Court did in the Bullis Case. Although the parol agreement here has not so many features of an independent contract as that in the Bullis Case, it still has sufficient to bring it entirely within the principle upon which that case

140 S.W.—74

was decided. The written contract provided for a sale to be consummated on February 1st, by the deposit in the First National Bank of Beaumont by appellee of the balance of the purchase money and by appellants of a merchantable title to the lands. This was all that was required to be done. If appellants complied and appellee failed, the earnest money was to be forfeited. If appellants failed on account of defects in the title, which appellee would not accept, there was breach for which appellee was entitled to damages; his damages being a return of the purchase money received. Roberts & Corley v. McFadden, 32 Tex. Civ. App. 47, 74 S. W. 105. As no purchase money had been paid, there would have been no recoverable damages. That was the condition under which the parties met at Beaumont on the 1st of February. Appellee had not then deposited the balance of the purchase price, nor did he afterwards do so, or offer to do so. The title offered was not in compliance with the contract, and on account of the defects the contract was not carried out. It was then agreed that appellants should not be required to make a merchantable title, but in lieu thereof they should make an effort to cure the defects in the title, but if they could not do so within a reasonable time appellee would accept their warranty deed for the timber. This entirely changed the conditions of the contract. It absolved appellee from the obligation to pay into the bank on the 1st of February the unpaid balance of the purchase money. It changed the measure of damages, as a refusal to make a warranty deed would be probably considered a willful breach, and entitle appellee to recover as damages for the loss of his bargain, and in addition to an extension of the time of performance it changed the terms, by relieving appellants of the obligation of tendering a merchantable title by substituting therefor their warranty deed. This cannot be considered as merely an agreement for the extension of the time of performance, and, even under the decision in the Bullis Case, was void.

[6] This leaves the case to rest upon the written contract alone, and, so considered, the sale failed by reason of the inability of appellants to make title. In such case appellee was not entitled to recover as damages the loss of his bargain—that is, the difference between the contract price and the market value—but only the purchase money paid, which was nothing. Roberts & Corley v. McFadden et al., 32 Tex. Civ. App. 47, 74 S. W. 105. There is such a full and satisfactory discussion and citation of authorities in the opinion of Judge Gill of this court in the above-cited case as to relieve this court of the necessity of further citation of authorities, many of which are collected in appellants' brief. The principle is not denied by appellee, who relies upon the verbal contract requiring appellants to tender merely a general warranty deed as showing that the failure to do so constituted a willful breach

entitling appellee to the damages claimed. This contention cannot be supported in any view of the evidence, and therefore we must hold that under the undisputed evidence appellee was not entitled to recover the damages prayed for or any part thereof.

[7] Looking to the written contract alone, appellee's case fails upon another ground. By its terms the obligation on the part of appellee to pay into the bank on February 1st the balance of the unpaid purchase money, and of appellants to deposit in the bank a merchantable title, were mutual and dependent promises. As said by our Supreme Court in Kelly v. Webb, 27 Tex. 368: "Neither party was entitled to enforce from the other a fulfillment of the contract without, at the same time, performing its stipulations on his part." In fact, the contract being unilateral and not binding appellee to take the land made it more strongly incumbent upon him to perform the condition of payment of the money into the bank upon the day provided in the contract. This was essential to his right to recover, and having failed to do so, or to offer to do so, appellants had a right to treat the option as forfeited and to sell the timber. Richardson v. Hardwick, 106 U. S. 252, 1 Sup. Ct. 213, 27 L. Ed. 145; Waterman v. Banks, 144 U. S. 394, 12 Sup. Ct. 646, 36 L. Ed. 479; Bank of Columbia v. Hagner, 1 Pet. 455, 7 L. Ed. 219; Johnson v. Portward, 89 Tex. 235, 34 S. W. 596, 787; Mitchell v. Sheppard, 13 Tex. 490; Lumber Co. v. Pharr, 82 Ark. 573, 102 S. W. 686; Tibbs v. Zirkle, 55 W. Va. 49, 46 S. E. 701, 104 Am. St. Rep. 977, and note; Shinn v. Roberts, 20 N. J. Law, 435, 43 Am. Dec. 636.

In our opinion on the former appeal it is said that by the terms of the contract appellants were to tender a merchantable title, and "thereupon" appellee was to pay the balance of the purchase money. This was an erroneous construction of the contract, which, however, did not affect the questions presented and decided on that appeal.

Our conclusion is that, taking the strongest view of the evidence of which it is susceptible in favor of appellee, his case must fail for the following reasons:

First. The evidence necessary to support the averments of the petition to render the description certain did not do so.

Second. The parol agreement entered into on February 1st was void under the statute of frauds and must be eliminated, and the parties limited, in the determination of their rights and obligations, to the written contract, from which it follows that:

Third. Appellee, not having paid or tendered the purchase money as provided in the contract, has no cause of action.

Fourth. If appellee had a cause of action, the trade having failed by reason of appellants' inability to furnish a merchantable title, and the breach not being either fraudulent or willful, appellee was not entitled to recover the damages sued for, but could only recover the purchase money paid, and, none having been paid, can recover nothing. Having sued for the difference between the contract price and market value, he is not entitled to recover.

[8] What we have said renders it unnecessary to pass upon many of the assignments of error. It follows that the trial court should have instructed the jury to return a verdict for appellants, and that the judgment should be reversed and judgment here rendered for appellants, and it has been so ordered.

Appellants not having complained of the judgment against them on their plea in reconvention for the earnest money, the judgment as to that is not disturbed.

Reversed and rendered.